ELMER L. CRADDOCK's (dependents') CASE.

Suffolk.    May 16, 19, 1941. — October 30, 1941.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Marriage and Divorce*, Validity of marriage, Foreign marriage. *Conflict of Laws. Workmen's Compensation Act*, Dependency, Findings by Industrial Accident Board, Recommittal to Industrial Accident Board. *Husband and Wife.*

Although the Industrial Accident Board in a proceeding under the workmen's compensation act failed to perform its duty to make specific and definite subsidiary findings upon the evidence reported which would be sufficient to enable this court to determine with reasonable certainty whether or not, in making a general finding upon a material issue, it had applied correct rules of law to facts warrantably found, the case was not remanded for a report of further subsidiary findings and the general finding was allowed to stand, where an examination of the evidence and such subsidiary findings as were made sufficiently showed the view of all subsidiary facts taken by the board, and that the general finding could not be said to have been unwarranted.

Upon evidence that a woman in Pennsylvania had gone through a marriage ceremony with a man with knowledge that he had been married before but without knowledge that a divorce from his former wife had not become absolute; that, after such decree became absolute, she continued to live with him in Pennsylvania for over a year as man and wife; that during that period a child was born to them, she was acknowledged by him publicly as his wife, and they were regarded as married by their friends and neighbors, a conclusion was warranted that they had entered into a relation of a common law marriage under the law of Pennsylvania.

A marriage in Pennsylvania, valid under the laws of that State as a common law marriage and recognized as valid in Maryland, made void a subsequent marriage ceremony of the man with another woman in Maryland.

A certification of the Industrial Accident Board to the Superior Court in a proceeding under the workmen's compensation act setting forth all the evidence and, without any stated findings of subsidiary facts, merely a general conclusion that it was "unable to find that" the wife of a deceased employee "was living apart" from him "for justifiable cause, and no dependency in fact has been shown," was not sufficient to enable this court to determine with reasonable certainty whether or not the board had applied correct rules of law to facts which it might warrantably have found where the reported evidence, if believed, warranted a conclusion contrary to that made by the board; and the case was remanded to the board for further proceedings and report.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board awarding compensation to Robert Hary Craddock as dependent child of the employee, and denying claims of Ann C. Craddock, alleged widow, and of Katherine Craddock, alleged widow.

A final decree was entered by order of *Sheehan*, J., in accordance with the decision of the board. The insurer and Katherine Craddock appealed.

*J. G. Leonard*, for the insurer.

*E. R. Greenhood*, for Katherine Craddock.

*S. Macmillan*, (*P. J. Woodward* with him,) for Robert Hary Craddock.

DOLAN, J. This is a workmen's compensation case. The claimants were Ann Chew Craddock, who claimed to be the wife of the deceased employee; Robert Hary Craddock, the child of the deceased and Ann; and Katherine Sinkovich Craddock who also claimed to be the wife of the deceased. By stipulation entered into between the parties,

the insurer does not now contest the issue whether the deceased's death resulted from personal injuries arising out of and in the course of his employment. The injuries were sustained by the deceased on April 25, 1939, and as a result he died on that day. All the material evidence is set forth in the record. The issues before us concern the validity of the marriage of the deceased to Ann, that of his marriage to Katherine, the status and rights of Robert, and, as affecting them, the dependency of Ann, and the correctness of the amount of compensation awarded to Robert, if he was a dependent of the deceased whom the deceased at the time of his death was legally bound to support.

The findings of the single member as to these subject matters follow: "I . . . find that the decedent married, and obtained a divorce from his first wife on January 2, 1934. The decree did not become final until April 2, 1934, and this was in the New Jersey court. He married the claimant, Ann Craddock, in Pennsylvania on September 30, 1933 and a son, Robert Hary Craddock, was born to them on April 30, 1935. Without securing a divorce he married Katherine Craddock in Maryland on January 2, 1937 and was living with her at the time of his death. Upon these facts I must first decide whether the claimant, Ann Craddock, and her child, Robert Hary Craddock, are entitled to the benefits of the compensation law. Since this marriage occurred in Pennsylvania, I must look to the law of Pennsylvania to determine whether this was a legal marriage in Pennsylvania and, if so, I must find it is a legal marriage in Massachusetts. The divorce of the deceased and his first wife did not become final until April 2, 1934; therefore, the deceased and Ann Craddock could not have married prior to that time. However, they lived together prior to that time under the belief, by Ann Craddock at least, that the prior marriage had been dissolved. After the prior marriage was completely dissolved they continued to live together, and, by so doing, entered into a relationship known as common-law marriage. They continued to live together and she was regarded as his wife, and the child, Robert Hary Craddock, was born April 30, 1935,

which was more than one year after the divorce had become absolute. The question which is vital in this case is the legal status of the child, Robert Hary Craddock. I am satisfied and find that the law of Pennsylvania considered this marriage a common-law marriage, and therefore Robert Hary Craddock is the legal child of that marriage. I am unable to find that the claimant, Ann Craddock, was living apart for justifiable cause, and no dependency in fact has been shown. Therefore, her claim for compensation is dismissed and denied. Robert Hary Craddock, being under the age of sixteen, is conclusively presumed to be dependent upon his father for support under G. L. c. 152, § 32(d), and is entitled to compensation at the rate of $10 a week from April 25, 1939, to continue, subject to the provisions of the Act, the sum due to the date of the filing of this decision being $430 (43 weeks)."

The findings and decision of the single member were affirmed and adopted by the reviewing board except that the amount presently due under the decision was adjusted to the date of the decision of the board. Only the insurer and the claimant Katherine filed claims for review by the board. The case now comes before us upon the appeals of the insurer and the claimant Katherine from the decree entered in the Superior Court in accordance with the findings and decision of the board.

We first consider the findings of the board that bear upon the issue of the validity of the "marriage" of Ann Chew to the deceased, and that of the subsequent "marriage" of Katherine Sinkovich to him. Although the findings of the board as to this subject matter cannot quite be said to be sufficient to support the conclusion that under the law of Pennsylvania there existed a valid common law marriage between Ann and the deceased (at the time of his death), and ordinarily it is the duty of the board to make such specific and definite findings upon the evidence reported as will enable this court to determine whether the general finding will stand, yet, on the whole, we think that the evidence is of such a character that it can be said properly that the findings under discussion go far toward

showing the view of the facts taken by the board, and that the conclusion of the board, in effect, that Ann was the wife of the deceased at the time of his death, cannot be said not to have been warranted, though additional subsidiary facts essential to support that conclusion were not specifically found. *Cahill's Case*, 295 Mass. 538, 539, 540, and cases cited.

The evidence may be summarized as follows: It was agreed by the parties that the deceased married Florence Elizabeth Craddock on May 30, 1931, at "Red Bank, New Jersey"; that she filed a petition for divorce in the Chancery Court of New Jersey on January 2, 1934, and that the decree became final on April 2, 1934. [1] On September 30, 1933, the deceased had "married" Ann Chew "at Delaware County, Pennsylvania." A certificate of this marriage was in evidence. They then took up their residence in the home of Ann's parents in Philadelphia where they remained, living as husband and wife, until sometime in April, 1935. On April 30, 1935, the claimant Robert was born in Philadelphia of this "union." On frequent occasions and publicly the deceased introduced Ann as his wife. Her parents and her friends believed her to be his wife. When he and Ann were married she knew that he had been married before. The deceased contributed to the support of Ann while they lived in her parents' home, and when Robert was born he paid the attendant medical and hospital expenses. He held Robert out as his child by Ann.

In May or June, 1935, the deceased, Ann and Robert removed to Gretna, Virginia, where they lived at the deceased's parents' home. Ann was introduced to them by the deceased as his wife and Robert "was known as his child." He contributed to her support and that of Robert. He was employed for the most part and frequently at a distance. When his "job was finished" he always returned to Gretna. He returned week ends when close enough to Gretna. He made Gretna his headquarters. In October, 1935, the deceased, who was then working temporarily in

---

[1] The finding of the board that the deceased obtained the divorce seems to have been made inadvertently.

Brooklyn, New York, sent for Ann.  They remained there
together in a rooming house for about three weeks.  Ann
then returned to Gretna, where she remained until May,
1936, in the home of the deceased's parents.  In February,
1936, she saw the deceased, who promised to send for her
wherever he was "when he got permanently located and
could make a home."  He did not do so.  From February to
May he sent her payments of $5 or $10 totalling $135.  Dur-
ing that period she did not see him.  Sometime in May, 1936,
she went to visit friends in Plainsboro, New Jersey, where
she remained "until around July 27."  While she was there
the deceased sent her $15 and sent her a letter stating that
"he was coming after her on the fourth of July and she
packed . . . her suitcase and got everything ready and
waited for him . . . for about two weeks afterwards."  He
did not appear and she then went to her mother's "in Phila-
delphia," where she has lived since with Robert, whom she
has supported.  She could have gone back to the home of the
parents of the deceased but she chose not to do so.  (There
is nothing to show that the deceased requested her to do so.)

In September, 1936, the deceased visited her in Phila-
delphia.  He then promised to send "support" for her
"and for the child."  He visited her again in September,
1938, and gave her $5.  In the meantime he had made
no provision for her support.  At the time of this latter
visit, he told her that he was going to Cleveland, Ohio,
would send her something each week for the baby, and that
he would send for her.  He did not keep either promise and
she did not hear of him or know of his whereabouts there-
after until notified by his parents of his death.  She had
tried to locate him through them but he had ceased to
communicate with them and they did not know where he
was.  On January 2, 1937, the deceased had gone through
a marriage ceremony in Maryland with the claimant Kath-
erine.  They lived together thereafter as man and wife in
various places (but not in Ohio) and for about two years
prior to his death at Providence, Rhode Island, where he
supported Katherine "completely;  provided . . . [her]
with food, lodging, clothes and amusement."

The validity of the marriage of Ann Chew to the deceased must be determined by the law of Pennsylvania. *Levy* v. *Levy*, 309 Mass. 230, 233, and cases cited. Under that law, because of the manifest danger of fraud and abuse, common law marriages are closely scrutinized, and it is required that to establish such marriages certain circumstances must concur. The marriage must be manifested by a reasonable period of open cohabitation. Reputation of marriage is required, that is, the parties must be regarded as married by their friends and neighbors. *Stevenson's Estate*, 272 Penn. St. 291, 297, 298. Where the relationship is meretricious at the outset it is presumed to continue as such unless it plainly appears that there was an actual agreement to form the legal relation of husband and wife. *Stevenson's Estate*, 272 Penn. St. 291. *Edwards* v. *Enterprise Manuf. Co.* 283 Penn. St. 420, 421. *Osterling's Estate*, 323. Penn. St. 23, 28, 29. Another requisite is evidence of assent by the parties to the informal marriage association, *Seifert's Estate*, 302 Penn. St. 447, 449, but assent may be implied from the conduct of the parties. *Thewlis's Estate*, 217 Penn. St. 307, 309, 310.

Since the divorce obtained by his first wife had not become final when the deceased married Ann, that marriage was void in spite of her innocence and her ignorance of any obstacle to the marriage. But after the impediment was removed she and the deceased continued to live together in Pennsylvania for a considerable period of time. During that period she was recognized by him and by the community as his wife. As is said in *Thewlis's Estate*, 217 Penn. St. 307, 309, "Naturally there was no repetition of a marriage ceremony, or any formal expression of marriage contract, for the wife never had knowledge that the one already entered into was not valid . . . ." In the *Thewlis* case the court held that an assertion by acts and conduct is in law "as efficacious as words for establishing a contract by implication." It follows that the contention of the claimant Katherine, that it must be concluded that no marriage existed between Ann and the deceased, because of the absence of express words of mutual assent after the impedi-

ment was removed, cannot be sustained. The cases of *Hantz* v. *Sealy*, 6 Binn. 405, *Hunt's Appeal*, 86 Penn. St. 294, 297, and *Fitzpatrick* v. *Miller*, 129 Pa. Super. Ct. 324, 327, upon which the claimant Katherine largely relies in support of her contention just referred to, are distinguishable in the facts. The points of distinction of the *Hantz* and *Hunt* cases are set out in the *Thewlis* case. In the *Fitzpatrick* case the relation was meretricious from the outset, since both of the parties knew of the existence of a prior marriage and that it was in force when they entered into marriage relations, and the evidence was held insufficient to rebut the presumption of continuance of the illicit relationship.

On the material evidence which has already been recited we are of opinion that it could be properly found that all the elements required to be proved under the law of Pennsylvania to establish a valid marriage between the deceased and Ann were present, and that it cannot be said that the conclusion of the board to that effect was unwarranted as matter of law. See *Wnukowski's Case*, 296 Mass. 63, 65. It follows that the conclusion that the claimant Robert is the legal child of that marriage was warranted.

A marriage that is valid in a foreign State or country is recognized in Maryland although it may not have been attended with the same formal ceremonies as are required for the celebration of a valid marriage in that State. *Redgrave* v. *Redgrave*, 38 Md. 93, 97, 98. *Jackson* v. *Jackson*, 82 Md. 17, 30. Since the common law marriage of Ann to the deceased was valid under the laws of Pennsylvania, it follows that the subsequent ceremony of marriage entered into by him and the claimant Katherine in Maryland was of no force and effect.

The insurer contends that even if the marriage of the deceased to Ann be held valid, nevertheless Robert was not a dependent of the deceased whom he was legally bound to support at the time of his death as required by G. L. (Ter. Ed.) c. 152, § 32 (d), since the board "found as a fact that Ann . . . was not living apart from . . . [him] at the time of his death for justifiable cause."

General Laws (Ter. Ed.) c. 152, § 32, provides in part as follows: "The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee: (a) A wife upon a husband with whom she lives at the time of his death, or from whom, at the time of his death, the department shall find the wife was living apart for justifiable cause or because he had deserted her. The findings of the department upon the questions of such justifiable cause and desertion shall be final." Such findings are final however only where there is evidence to warrant them. *Newman's Case,* 222 Mass. 563.

As to this phase of the case the sole "findings" of the board are that it is "unable to find that the claimant, Ann Craddock, was living apart for justifiable cause, and no dependency in fact has been shown." Presumably the latter finding was based on the conclusion of the board that it was unable to find that Ann was living apart for justifiable cause. Although Ann did not claim a review of the decision of the board, the determination of the question whether she was in fact and as matter of law living apart from the deceased at the time of his death or had been deserted by him has an important bearing upon the question whether the deceased was legally bound to support their child who was living with her, and also upon the correctness of the award of compensation, which has been attacked by the insurer. It has been held on the one hand that, where a wife is justified in leaving her husband and takes their child with her, the child (under the age of sixteen years) is conclusively presumed to be dependent upon the husband at the time of his death although living apart from him, *Thurman's Case,* 259 Mass. 222, 225, 226; and on the other that the husband is not so bound where the wife leaves without cause, taking the child with her, and that the fact that the husband does not attempt to compel her to give up the custody of the child does not of itself authorize her to bind him for the child's support. *Baldwin* v. *Foster,* 138 Mass. 449, 453. See also *Gillander's Case,* 243 Mass. 5, 6; *Miller's Case,* 244 Mass. 281, 284. In the present case whether the domicil of Robert be regarded as that of the

deceased at the time of his death, Rhode Island, or that of Ann, Pennsylvania, if Ann was then living apart from the deceased for justifiable cause or had been deserted by him, under the law of each of these States the deceased would have been legally bound at the time of his death to support Robert. Rhode Island G. L. (1938) c. 427, § 1. Penn. Pub. Laws (1867) 78; (1939) 872, § 733. See *Camerlin* v. *Palmer Co.* 10 Allen, 539, 540; 2 Bishop, Marriage, Divorce, and Separation, § 1157.

In the matter of the status of Ann when the deceased died nothing appears in the findings and decisions of the board except the two general conclusions already set forth. These mere general conclusions unaccompanied by a single finding of fact as a basis to support them do not comply with the intention of the Legislature, as expressed in the workmen's compensation act. They do not satisfy the statutory requirement of findings of fact (§§ 8, 10) " at least unless the evidence reported is of such a character that 'no reasonable inference could be drawn to the contrary.' " *Rozek's Case*, 294 Mass. 205, 206, 207. *Belezarian's Case*, 307 Mass. 557, 559, 560, and cases cited. The present case is not one where on the evidence no reasonable inference to the contrary can be drawn. In accordance with the duty of the board all the material evidence is contained in the record. Upon that evidence, if believed, it is manifest that findings would be warranted, if not required as matter of law, that the deceased had failed to provide suitable support for Ann and her child for a period of almost three years prior to his death, though of sufficient ability to do so; that Ann and the deceased were not living apart by mutual consent; that in fact she was ready and willing to live with him at all times, but that he deserted her; and that at the time of his death she was living apart for justifiable cause. (There was no evidence of marital misconduct on her part.) The element of the credibility of the witnesses, which was for the board, enters into the disposition of this phase of the case. In this situation we cannot, from the two naked general conclusions made by the board, "determine with reasonable certainty whether

or not correct rules of law have been applied to facts which could properly be found . . ." and such a determination "is a necessary part of the judicial review for which the workmen's compensation act provides." *Di Clavio's Case,* 293 Mass. 259, 261, 262. *Demetrius's Case,* 304 Mass. 285, 287. *Belezarian's Case,* 307 Mass. 557, 559, 560.

The decree entered in the Superior Court is reversed, and a decree is to be entered remanding the case to the Industrial Accident Board for further proceedings not inconsistent with this opinion.

' *Ordered accordingly.* .