Cindy **INDELICATO,**
**Claimant-Respondent,**

v.

**MISSOURI BAPTIST HOSPITAL,**
**Employer-Appellant.**

No. 48876.

Missouri Court of Appeals,
Eastern District,
Division One.

March 12, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 26, 1985.

Robert M. Evans, St. Louis, for employer-appellant.

Leroy Crouther, St. Louis, for claimant-respondent.

KAROHL, Judge.

Employer-insurer, by direct appeal from the Labor and Industrial Relations Commission, appeals award of Workers' Compensation to claimant. § 287.495 RSMo Supp.1984. The Commission approved and affirmed the administrative law judge's compensation award for three and three-sevenths weeks temporary total disability, thirty weeks for permanent partial disability and reimbursement of medical expenses, a total of $4,324.16.

The employer contends that the evidence was insufficient to support a finding that claimant sustained an accident arising out of or in the course of her employment and failed to prove medical causation. The disputed issues were: (1) whether the claimant sustained an injury by accident covered by the Workers' Compensation Law; (2) the nature and extent of permanent partial disability including the question of medical causal connection between the accident (if there was one) and claimant's present condition; (3) the extent of temporary total disability; and, (4) medical expense reimbursement.

The only evidence of accident was the testimony of claimant. She was employed as an x-ray technician for Missouri Baptist Hospital. On January 6, 1983 while moving a heavy patient from a cart onto an x-ray table her "... left foot gave way a little bit because the floor is kind of slippery in there ... (she) felt a little something in my back, but it wasn't no big deal, so I didn't say anything. It hurt about two or three seconds and I just pulled the patient over and did my examine." The slippery condition of the floor was the result of the use of silica spray in that area which tended to make the waxed floors "like an ice skating ring." Two or more employees of the hospital were present and assisted in moving the patient, however, she did not say anything to the others about the incident or the pain. The incident occurred between 10:00 and 12:00 a.m., sometime before lunch. Claimant finished working that day. Pain developed the next day and became progressively worse. On January 11, 1983 she saw Dr. Holder, an orthopedist who was on staff at the hospital. Dr. Holder did not testify but his office records were admitted into evidence. There is no indication that she mentioned the accident to Dr. Holder. He prescribed medication and advised her to go home and stay off work. On January 23, 1983 she was hospitalized for back complaints and underwent various tests including a CAT scan and myelogram. She was discharged from the hospital on February 2, 1983 with a diagnosis of degenerative disc disease L5–S1. The myelogram disclosed a minimal midline bulge at L5–S1. She returned to work on February 7, 1983 and continued to work regularly to the date of the hearing.

Prior to the event and after discharge from the hospital claimant regularly exercised by lifting weights. In both March and May of 1983 she suffered back pain when lifting weights. On the first occasion she was barely able to walk and consulted a chiropractor. After the incident in May she was under the care of the chiropractor for six weeks. After her discharge from the hospital in February she never returned to Dr. Holder for treatment of her back condition.

Medical evidence consisted of Dr. Holder's records, the hospital records, and the testimony of Dr. Jerome F. Levy, examining doctor for claimant, and, Dr. Marshal B. Conrad, an examining doctor for employer hospital.

Dr. Levy diagnosed claimant's condition as a herniated disc L5–S1 in remission. His opinion was based upon the hospital records including the CAT scan and myelogram and the history given by claimant that she had no back complaints or claims prior to the incident on January 6, 1983. He conceded that if the facts were other than those given to him his conclusion or opinion might change. It was his opinion that a midline bulge is synonomous with a herniated disc or extrusion; that the claimed accident was causal to the condition; and that the claimant had a permanent partial disability of 20% of the man as a whole. The hospitalization admission note states that claimant was admitted for low back pain with "... the history of spontaneous onset of low back pain ..." It also states, "[s]he has been interested in body building and has lifted weights and done quite a bit of exercising but has not had any particular accident either doing her exercises or at work which is precipitating her current symptom complex." The discharge summary dated February 2, 1983, dictated by Dr. Holder, gives a discharge diagnosis of, "degenerative disc disease L5–S1." This diagnosis related to a midline bulge at L5–S1 demonstrable on the CAT scan. There was some tendency toward right lateralization.

Dr. Conrad testified that he examined claimant on August 15, 1983. At that time she had no symptom complaints and was completely normal. His examination of the records and particularly the CAT scan and myelogram led him to the opinion that claimant had degenerative disc disease or a bulging annulus.[1] He could not tell which. His testimony emphasized a normal developmental condition or disease which would have existed more than a month before the January 19, 1983 myelogram. He testified that it was possible weight lifting could cause disc problems but did not conclude that it was a probability in this instance. He did confirm that claimant's history was consistent with an injured back. Although

the myleogram was not negative he interpreted it not to show a herniated disc according to his definition.

Although disagreeing on the extent of the injury, both doctors agreed there was a bulging disc in claimant's back. The administrative law judge found "that although this condition probably pre-existed the alleged incident herein; it was largely asymptomatic prior to the alleged incident. Considering the testimony presented I find the incident of January 6, 1983 aggravated her condition producing symptoms of back pain." He concluded that claimant's lack of serious complaint at the present time as well as the question of some possible pre-existing disability justified an award of less than that which would normally be assigned for a bulging annulus and awarded 7½% of the unscheduled four hundred weeks. This was substantially less than the degree of disability determined by claimant's Dr. Levy.

Our review is governed by § 287.495.1 RSMo Supp.1984:

Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

. . . .

(3) The facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■ Under Mo. Const. Art. V, § 18, judicial review in cases coming from administrative agencies include the determination whether the decision is supported by competent and substantial evidence upon the whole record. Our review of Workers' Compensation cases must be in the light

---

1. A bulging annulus is a ligament that surrounds the disc as opposed to the nucleus pulposus which is internal of the disc.

most favorable to the award of the Commission and we uphold the decision of the Commission if it is supported by competent and substantial evidence. *Blissenbach v. General Motors Assembly Div.,* 650 S.W.2d 8, 11 (Mo.App.1983). "The Commission is charged with the responsibility of passing upon the credibility of witnesses, and it may disbelieve testimony of a witness though no contradictory or impeaching evidence is introduced." *Id.*

Appellant employer's first point is that there was no competent or substantial evidence that claimant sustained an accident within the meaning of Workers' Compensation.[2] It argues that because no complaint was made to fellow workers at the time of the event and no history of the event was given to medical authorities her testimony is not worth belief. The employer relies on *Duncan v. A.P. Green Refractories Co.,* 522 S.W.2d 639 (Mo.App.1975). In *Duncan* the claimant alleged a September 11, 1970 injury. He continued to work until September 28, 1970 and never mentioned the facts of the accident supporting his claim. Company procedures required a written report of accident and none was filed. Plaintiff had been under the care of a chiropractor for nine months prior to the incident. He did not mention the event to medical authorities consulted after the incident. Plaintiff's surgeon reported a history of recurring back difficulties for eight months preceding. Claimant Duncan had signed numerous claim forms which denied an accident. The court held that "[p]laintiff's testimony alone, in the face of an overwhelming mass of contrary evidence, compels our conclusion that the entire record fails to show the Commission's award was supported by competent and substantial evidence." *Id.* at 641.

■ We distinguish the present claim from *Duncan* on the facts. This claimant had no prior back complaints or medical care. She made no conflicting statements denying an accident. She simply did not

make an immediate alarm, did not notify her assistants at the time of the event and did not connect it as part of her medical history given to Dr. Holder and employer hospital. However the claim for compensation was filed on February 3, 1983 which was less than thirty days after the event. The medical evidence in the form of hospital records and the doctor's testimony does not conflict with her description of the accident. She related the history of accident to Dr. Levy and he relied on it in expressing his causation opinion. She related a history of injury while at work to Dr. Conrad. The medical records at the employer hospital are silent on the issue but not conflicting. The administrative law judge and the Commission were free to believe or disbelieve her testimony describing the accident. We are not free to disbelieve it as being against the weight of any evidence merely because she did not describe the accident to Dr. Holder or to employer hospital at the time of admission. § 287.495.1 RSMo Supp.1984; *Blissenbach,* 650 S.W.2d at 11. As the Supreme Court noted in *Davies v. Carter Carburetor, Division ACF Industries, Inc.,* 429 S.W.2d 738, 748 (Mo.1968) "[t]he Commission is authorized to base its findings and award solely on the testimony of a claimant. [Her] testimony alone, if believed, constitutes substantial evidence to establish that [she] sustained an injury arising by accident ..."

■ Employer's second contention is that claimant failed to prove a medical causal relationship between her injury and her disability and the specific percentage of disability resulting from the injury. Dr. Levy gave his opinion to a degree of reasonable medical certainty that the accident as described was causal to her back condition. It was the "triggering episode." Nor was his testimony compromised by his acknowledgement that if the facts were different he might change his opinion. As we have already held that the facts as found by the Commission were supported,

---

2. Section 287.020.2 RSMo Supp.1984 defines accident as "an unexpected or unforeseen event happening suddenly and violently, with or with-

out human fault, and producing at the time objective symptoms of an injury."

it follows that the facts on which Dr. Levy relied in expressing his opinion of causation are supported by the evidence. This distinguishes the present case from *Downs v. A.C.F. Industries, Inc.*, 460 S.W.2d 293 (Mo.App.1970) where the testimony of claimant's doctor was "neutralized" on cross-examination.

Absent evidence of a pre-existing condition and pre-existing disability the present contention of error is not controlled by *Griggs v. A.B. Chance Company*, 503 S.W.2d 697 (Mo.App.1973) relied on by employer. Here there is no evidence the pre-existing degenerative back condition was symptomatic before the accident. There was no pre-existing disability although there may have been a degenerative condition. It may never have been symptomatic except for the accident. "An accident need not be the sole or direct cause of injury to be compensable; it is enough that the accident be an 'efficient, exciting, superinducing, concurring or contributing cause.'" *Smith v. Cook Paint & Varnish Co.*, 561 S.W.2d 730, 732 (Mo.App.1978).

*Griggs* held that lay testimony could not establish medical causation in a complicated medical issue. Here Dr. Levy supplied the required medical testimony of causation and extent of disability.

In light of the standard of review set forth in § 287.495.5 RSMo Supp.1984 we affirm the award of the Commission.

PUDLOWSKI, P.J., and GAERTNER, J., concur.