Lewis R. **PARROTT**, Claimant–Appellant,

v.

**HQ, INC.,** d/b/a Aqua–Mist Cleaning, Employer–Respondent,

and

**Continental Casualty Company,** Insurer–Respondent.

No. 20050.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 20, 1995.

Larry J. Pitts, John M. Taylor, Ramsdell & Associates, Springfield, for claimant-appellant.

Kenneth T. Walter, Mann, Walter, Weathers, Walter & Bishop, Springfield, for employer-respondent.

SHRUM, Chief Judge.

In this workers' compensation case, Lewis R. Parrot (Claimant) appeals from the Final Award entered by the Labor and Industrial Relations Commission (Commission) denying him compensation for a back injury allegedly sustained while working for HQ, Inc., d/b/a Aqua–Mist Cleaning (Employer).[1] The Commission, affirming the findings of the Administrative Law Judge (ALJ), ruled that Claimant failed to carry his burden of proof that he sustained an injury on December 16, 1992, and also failed to establish that he had given proper notice of that injury to Employer.

We reverse and remand.

## FACTS

In his "Claim for Compensation" form, Claimant alleged an on-the-job injury to his back "[o]n or about December 16, 1992 and thereafter." He designated the job-site where injured as "[i]nitially injured ... East Ritter work site, 135 East Ritter, Republic, Greene County, MO." As to "How injury occurred," Claimant alleged:

"While lifting up a large roll of wet carpet carrying it up a flight of stairs, employee suddenly and unexpectedly strained, twisted or damaged [his back] ...; subsequently, on two separate occasions while lifting and working with wet, large rolls of carpet, employee either injured, re-injured, or aggravated the previous back problems initially sustained at the Ritter work site."

The Employer's amended answer denied Claimant's allegations and pled affirmatively that his claim was barred for his failure to give timely written notice to the Employer regarding the accident as required by § 287.420.[2]

At the hearing before the ALJ, Claimant's testimony included this. On December 16, 1992, he was working as a carpet cleaner for Employer. He and two co-employees, Curtis Yandell and Leo Fitts, were moving wet carpet from the basement of a home on Ritter Street in Republic, Missouri. He estimated its weight to be between 400 and 500 pounds. To remove the carpet, they had to carry it up the basement steps. Claimant was in front, Yandell in the middle, and Fitts at the back. As Claimant got to the top of the steps, he "could feel this pulling on my back," on the "right side ... at the belt line." He put the carpet down, arched his back, and tried to stretch it out, but this did no good. He did not recall whether he yelled or otherwise exclaimed about the pain at the time. The owner of the home where they were working then helped take the carpet on out.

After the December 16 incident, Claimant had back pain, which he described as strong in the morning, not so bad in the evening, and for which he was taking six or eight Advils per day. Despite the pain, Claimant continued to work without seeing a doctor and without reporting it to Employer. He explained that with his limited experience he saw no reason to seek medical care.

Claimant testified that in early January 1993, he worked in another flooded basement, this time in Springfield, Missouri, where he again helped move wet carpet and also a heavy desk and other household items. After that job, Claimant's back "got worse," "it just felt like ... the muscles were pulled again ... that's what I was thinking." Continuing, Claimant testified that on January 22, 1993, he worked on a job in Nixa where he helped move furniture, carpet, and related items.

---

1. Continental Casualty Company (Insurer) is the Employer's workers' compensation insurance carrier. Collectively we refer to "Employer" and "Insurer" as "Respondents."

2. All statutory references are to Revised Missouri Statutes 1994, unless otherwise indicated.

On January 25, 1993, the following occurred. When Claimant awoke, he was throwing up. He called his Employer, reported he was sick, and was going to see his family physician. That doctor immediately sent Claimant to a chiropractor, Dr. Maurer. Claimant saw Dr. Maurer that same day. Claimant then called Employer to advise that Dr. Maurer wanted him to take off a few days "to see what was wrong."

On February 1, 1993, Claimant gave Employer a work release signed by Dr. Maurer. It was then that Claimant first told Employer he had suffered injury while on the job on December 16, 1992. Immediately, Employer sent Claimant to its physician, Dr. Campbell. After testing Claimant, Dr. Campbell's diagnosis was that he had a herniated disc, right side, at the L4–L5 level. Claimant was referred to Dr. Michael Clarke, an orthopedic surgeon. Later, Dr. Clarke performed surgery on Claimant, during which he confirmed Dr. Campbell's diagnosis. In deposition testimony, Dr. Clarke stated his opinion that, based on the history given him, Claimant's herniated disk at the L4–L5 level "was medically or causally related or linked to [Claimant's] on-the-job injury of December 16, 1992, or continuing work thereafter."

The ALJ found that Claimant failed to carry his burden of proof that he sustained an injury on December 16, 1992, and also failed to establish that he had given proper notice of that injury to Employer. The Commission adopted and affirmed the ALJ's findings. This appeal followed.

*Point I(A): Employer's Alleged Non-Compliance With § 287.127*

■ In Point I(A), Claimant challenges the Commission's ruling that denied him benefits because of his failure to give Employer written notice of his alleged December 16, 1992, injury within the time limits of § 287.420. Section 287.420 reads:

"No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury, and the name and address of the person injured, have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the accident, unless the division

or commission finds that there was good cause for failure to give the notice, or that the employer was not prejudiced by failure to receive the notice. No defect or inaccuracy in the notice shall invalidate it unless the commission finds that the employer was in fact misled and prejudiced thereby."

The purpose of the § 287.420 notice requirement "is to give the employer a timely opportunity to investigate the facts and promptly furnish medical attention to the employee to minimize the injury." *Hillenburg v. Lester E. Cox Medical Center,* 879 S.W.2d 652, 655[3] (Mo.App.1994).

In this case, Claimant admitted he gave no written notice of the injury within thirty days after December 16, 1992. Nevertheless, he contends in Point I(A) that the Commission erred in denying his claim for want of timely notice under § 287.420 because of Employer's failure to substantially comply with § 287.127. Claimant argues that the Commission did not consider or apply the latter provision.

Section 287.127 provides, in part:

"1. Beginning *January 1, 1993,* all employers shall post a notice at their place of employment, in a sufficient number of places on the premises to assure that such notice will reasonably be seen by all employees. An employer for whom services are performed by individuals who may not reasonably be expected to see a posted notice shall notify each such employee in writing of the contents of such notice. *The notice shall include:*

" . . . .

"(2) That employees must report all injuries immediately to the employer ... *and that the employee may lose the right to receive compensation if the injury ... is not reported within thirty days....*" (Emphasis ours.)

We find no case law interpreting § 287.127. The legislature used unmistakable and explicit language in § 287.127 to declare that beginning January 1, 1993, employers must post or otherwise provide employees with notices that inform them of their obligation to report injuries, the deadline for reporting, and the possible adverse

consequences of non-compliance. Its clear purpose is to benefit Missouri workers by placing on employers a duty to post or otherwise give notices designed to inform employees of (1) what they must do to ensure the preservation of a valuable right, and (2) the statutory deadline within which they must act.

Other than creating a criminal offense for willful violation and providing a penalty therefor, § 287.127 does not state the effect or impact, if any, of non-compliance with its provisions.[3] Nevertheless, Claimant insists that because of this statute, Respondents should not be able to absolve themselves from liability on the ground that Claimant failed to meet a statutory deadline which Employer should have brought to his attention but did not.

■■■ Claimant's contention that Employer's alleged non-compliance with § 287.127 exempts him from the reporting requirement of § 287.420 must be analyzed with certain rules of statutory construction in mind. Under § 287.800, we are to give all provisions of the Workers' Compensation Act (the Act) such construction as will promote the public policy of extending its benefits to the largest possible class, *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781, 783[2] (Mo. banc 1983), provided such construction can be given without violating fixed rules or principles of law.[4] *McClintock v. Skelly Oil Co.*, 232 Mo.App. 1204, 114 S.W.2d 181, 190 (1938). The law is to be liberally construed with a view to the public welfare and in furtherance of the public policy that an employee is entitled to have compensation for any injury that is clearly job-related and arises out of and in the course of his employment. *Wolfgeher*, 646 S.W.2d at 783–85. Accordingly, our courts consistently hold that

in construction of the Act, any doubt or question as to the right of an employee to compensation shall be resolved in favor of the injured employee. *Wolfgeher*, 646 S.W.2d at 783[2]; *McClintock*, 114 S.W.2d at 190[15].

■■■ A new statute must be construed in light of the defect it seeks to remedy and the usages, circumstances, and conditions existing at the time the change was made. *Darrah v. Foster*, 355 S.W.2d 24, 31[12] (Mo. 1962). Missouri Courts do not presume that the legislature enacts meaningless provisions. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203[4] (Mo. banc 1992). "When the legislature amends a statute, it is presumed to have intended the amendment to have some effect." *Id.* at 203[5].

■■■ With these principles to guide us, we look first at *Cleveland v. Laclede–Christy Clay Products Co.*, 113 S.W.2d 1065 (Mo.App. 1938), where the Eastern District considered a statute we deem analogous to § 287.127. In *Cleveland*, a widow sued her late husband's former employer, contending that his death was caused by an occupational disease. In defense, the employer alleged that the widow's claim was exclusively under the Workers' Compensation Act.[5] That defense was based on the employer's claim that it used § 3305(b) Laws of Mo.1931, p. 383–84, to bring itself within the Act with respect to occupational diseases, thus excluding the widow from any other remedy. In part, § 3305(b) read:

"[N]othing in [the Workers' Compensation Act] shall be construed to deprive employees of their rights under the laws of this state pertaining to occupational diseases, unless the employer shall file with the commission a written notice that he elects to bring himself with respect to oc-

**3.** Section 287.127.3 provides: "Any employer who willfully violates the provisions of this section shall be guilty of a class A misdemeanor and shall be punished by a fine of not less than fifty dollars nor more than one thousand dollars, or by imprisonment in the county jail for not more than six months or by both such fine and imprisonment, and each such violation or each day such violation continues shall be deemed a separate offense."

**4.** In part, § 287.800 provides that "[a]ll of the provisions of this chapter shall be liberally construed with a view to the public welfare...."

**5.** *See* § 287.120.2 (formerly § 3691, RSMo 1939), which in pertinent part provides:
"2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee ... at common law or otherwise, on account of such accidental injury...."

cupational disease within the provisions of this act *and by keeping posted in a conspicuous place on his premises a notice thereof to be furnished by the commission,* and any employee entering the services of such employer and any employee remaining in such service thirty days after the posting of such notice shall be conclusively presumed to have elected to accept this section unless he shall have filed with the commission and his employer a written notice that he elects to reject this act." (Emphasis ours.)

In discussing the employer's alleged compliance with § 3305(b), the *Cleveland* court said:

"Defendant's theory that plaintiff's claim was exclusively under the Missouri Workmen's Compensation Act is an affirmative defense, the burden of pleading and proving of which was upon defendant.... To sustain such a defense *defendant was required to prove ...* [among other things] *... that it kept posted on its premises in a conspicuous place a notice of such acceptance furnished by the Commission....*"

*Id.* at 1071 (emphasis ours) (citations omitted).

As with § 287.127, the statute considered in *Cleveland* said nothing about the impact or effect of non-compliance with its notice-posting requirement. Nevertheless, as Judge Stone observed in *Hogue v. Wurdack,* 298 S.W.2d 492, 497 (Mo.App.1957), the *Cleveland* court recognized or assumed that in compensation cases substantial compliance by an employer in posting statutory notices is essential and non-compliance may be fatal to rights otherwise afforded to an employer. *See State ex rel. National Lead Co. v. Smith,* 134 S.W.2d 1061, 1066–67 (Mo.App.1939) (quoting *Cleveland* with approval).

*Cleveland* and *National Lead* do not stand alone. Cases that have analyzed other statutes with notice provisions like those in § 3305(b) have accorded them the same effect as *Cleveland* gave to § 3305(b). For example, § 287.060, RSMo 1949,[6] and § 287.090(2), RSMo 1949,[7] prescribed a method whereby the Act might be accepted or rejected in some instances. Employers who opted to accept or reject the Act had to post a notice of their election. As with the statute in *Cleveland,* §§ 287.060 and .090(2), RSMo 1949, were silent about the consequences of non-compliance, yet, cases considering these provisions continued to recognize or assume that employers who failed to comply could lose rights to which they might otherwise be entitled. *See Hogue,* 298 S.W.2d at 497 (commenting on *Brollier v. Van Alstine,* 236 Mo.App. 1233, 163 S.W.2d 109, 112 (1942); *Douglas v. Calvary Cemetery Ass'n,* 222 S.W.2d 572 (Mo.App.1949); *McClintock,* 114 S.W.2d at 190). *See also* Merrill on Notice §§ 509 & 754 (1952); 66 C.J.S. *Notice* § 16 (1950); *Rider v. Julian Martin, Inc.,* 31 Ark.App. 144, 789 S.W.2d 743, 744 (1990) (holding that an employer will not be allowed to benefit from its failure to post required notices).

With some recent exceptions, the history of the workers' compensation law suggests a progression of an enlarged liability intended to relieve workers from the financial burden of industrial injuries. *Yardley v. Montgomery,* 580 S.W.2d 263, 270 (Mo. banc 1979). We conclude that the legislature intended § 287.127 to be another step in that progression. We also presume that it intended § 287.127 to have meaningful effect. *Wollard,* 831 S.W.2d at 203. For these reasons and based on the cases mentioned herein

---

**6.** In pertinent part, § 287.060, RSMo 1949 (now repealed), read:

"1. Every employer ... except as in this chapter otherwise provided, shall be conclusively presumed to have elected to accept ... this chapter ... unless prior to the accident he shall have filed with the commission a written notice that he elects to reject this chapter.

"....

"4. The commission shall also furnish to each employer rejecting the chapter a notice thereof, *which the employer shall keep posted in a conspic-*

*uous place on his premises where it can be seen by his employees.*" (Emphasis ours.)

**7.** In part, § 287.090.2, RSMo 1949 (now repealed), read:

"2. Any employer in this section exempted from [the Act] may bring himself within the provisions of this chapter by filing with the commission notice of his election to accept the same, *and by keeping posted in a conspicuous place on his premises a notice thereof to be furnished by the commission....*" (Emphasis ours.)

that interpreted analogous statutes, as well as the legislative mandate to liberally construe the Act, we hold that employers who do not substantially comply with § 287.127 may lose the defense that might otherwise have been available to them under § 287.420. We except from our holding those situations where an employee has actual knowledge of the information required to be in a § 287.127 notice and cannot show prejudice as a result of employer's failure to post or otherwise give the notice. *See Hogue*, 298 S.W.2d 492. *See also Larabee v. Washington*, 793 S.W.2d 357, 361 (Mo.App.1990).

In light of our construction of § 287.127, we must next decide if it applies to this case as Claimant contends. During the first fifteen days of Claimant's mandatory reporting period (December 16–31, 1992), Employer was under no duty, statutory or otherwise, to post notices or otherwise inform Claimant of his reporting obligation under § 287.420 or of possible consequences for non-reporting. However, that was no longer true as of January 1, 1993. Beginning on that date and for the remainder of Claimant's reporting period, Employer clearly had a duty to post the § 287.127 notice. Respondents do not seriously quarrel with this latter observation. Instead, they contend that § 287.127 "creates a duty on the part of employers which in its breach could give rise to a cause of action (claim) on the part of an employee under the Missouri Workers' Compensation Act where none existed previously, it is substantive and, therefore, operates prospectively only." With that as their premise, Respondents insist that § 287.127 "can not [sic] be held to apply to a pre–1993 injury even though the thirty-day reporting period for that injury has not expired." Claimant, on the other hand, argues that § 287.127 affects a remedy only and does not impair a substantive right; therefore, it should be applied retrospectively to his case.

■ Although invited by these arguments to do so, we need not decide whether § 287.127 is remedial or substantive. This follows because the circumstances here call for the application of the rule that a statute ordinarily applies to *"all things and conditions existing"* at its effective date. *State ex*

*inf. Noblet ex rel. McDonald v. Moore*, 347 Mo. 1170, 152 S.W.2d 86, 87[1] (banc 1941). Here, on January 1, 1993, *"things* and *conditions* existing"* included the fact that fifteen days of Claimant's reporting period remained. Whether § 287.127 is remedial or substantive, it applied to Claimant's case for the portion of his reporting period that fell after December 31, 1992. We reject Respondents' arguments to the contrary.

Respondents make the additional argument that even if § 287.127 applied to this claim after January 1, 1993, the Employer substantially complied with § 287.127 because of two written notices in evidence. Respondents assert that the contents of such notices gave a more stringent warning than that which the statute requires; hence, their claim of substantial compliance. We decline to consider that argument, however, as the record here presented lacks substantial and competent evidence on whether the two notices in evidence, exhibits 1 and 2, were posted during the period that Claimant worked for Employer.

First, we note that the only evidence bearing on the posting of notices about injury reporting came from Leonard Fitts, manager of Employer's carpet division.

"Q. [To Fitts on direct examination] Let me hand you what's been marked as Employer and Insurer's Exhibit 1. Can you identify that for me?

A. Yes. This is a document that is placed above the time clock and above our copy machine in the front office for all . . . workers to see and read. Basically what it does, it tells you what to do in case of an injury.

Q. And Employer and Insurer's Exhibit 2, what is that?

A. This is a copy of our basically our company physician and or—you know, there are three physicians here, Dr. Campbell being the number one, which means any injury will go to him first. I take it if his office is closed or something, then we would go to General Medical Center.

Q. Is that also a notice?

A. Yes. This is above the time clock and above the copying machine, right beside the other document."

Fitts' cross-examination testimony on this subject follows:

"Q. Sir, you previously identified [Respondents'] Exhibit 2, a document captioned 'Attention Employees, Important Notice About On–The–Job Injuries', something provided by Home Buildings Insurance Program; is that right?

A. Yes.

Q. And you said that's posted somewhere near your time clock; is that right?

A. Two different places, near the time clock and above the copy machine in the front office.

Q. ... [L]ook at Exhibit 2 carefully. Where in that document, sir, does it tell people like Lewis Parrott that the company or the insurance company may or may not pay their claim unless an injury is reported within 30 days of the event?

A. On this document, I see nowhere."

With only the foregoing identification, Exhibits 1 and 2 were offered and received in evidence without objection.

As to the contents of the exhibits, Exhibit 1 includes the following:

*"Employee Must:*

1. Report the injury **IMMEDIATE-LY**.... Any delay in reporting an accident may result in loss of right to compensation benefits."

Exhibit 2 contains this:

"Work injuries and occupational diseases should be reported in writing whenever possible. The worker may lose the right to compensation if an accident is not reported within a specified time period."

There is nothing on the face of either exhibit to indicate when the notices were posted.

In summary, neither in Fitts' testimony nor on the face of the notices, nor elsewhere in this record, is there direct evidence or evidence from which it can reasonably be inferred when the notices were posted. The time span between Claimant's initial employment and alleged injury date was relatively short, i.e., October 7, 1992, to December 16, 1992. Whether exhibits 1 and 2 were posted during that period, in the December 16–31, 1992, time frame, or even during the period of January 1–15, 1993, are facts upon which we can only speculate. "Appellate courts do not render advisory opinions." *Workman v. Vader,* 854 S.W.2d 560, 564[6] (Mo.App.1993). In the context of this record, Respondents' assertion that exhibits 1 and 2 substantially complied with the requirements of § 287.170 raises a purely hypothetical issue. *Id.* Accordingly, we decline to decide that question.

In declining to decide the "substantial compliance" issue, we do not ignore the Commission's finding that "[t]he claimant *testified* that he was aware of his employer's policies [on] reporting injuries and *that the employer had clearly posted these policies at work."* Contrary to what the Commission found, Claimant never testified "that the employer had clearly posted these policies at work" nor is there evidence from which that can reasonably be inferred. Claimant's testimony was that he understood he was "to immediately report any on-the-job injury," nothing more. The record leaves us to speculate as to how Claimant gained that knowledge. We are also left to speculate on whether Claimant was "an individual who may not reasonably be expected to see a posted notice" and, therefore, entitled to written notice under § 287.127.1.

We also note Claimant was never questioned about his actual knowledge of the time limits for reporting injury or the consequences of untimely reporting injury. Except for Fitts' testimony about exhibits 1 and 2—deficient because it did not disclose when the notices were posted—Respondents produced no evidence bearing on Claimant's actual knowledge of the deadline for reporting his injury or possible consequences for untimely reporting.

■ In light of our determination that § 287.127 applies to this claim, we are unable to conclude from this record that there was substantial and competent evidence to support the Commission's finding that Claimant's failure to timely comply with § 287.420 was fatal to his claim. Under the circumstances we are unable to escape the conclu-

sion that, " '[o]ne guess is as good as another,' " *Hogue,* 298 S.W.2d at 501, as to whether:

(1) Claimant was an employee entitled to posted notice only or, rather, was he entitled to written notice, § 287.127.1;

(2) Exhibits 1 and 2 were posted during the period of Claimant's employment; and

(3) Claimant had actual knowledge or information that a § 287.127 notice was designed to impart.

These are questions that can only be answered on remand.

*Point II: Failure to Prove Injury Occurred On Date Alleged*

A heavily disputed fact issue in this case is whether Claimant sustained a job-related injury on December 16, 1992. The principal question presented by Claimant's second point is whether a determination of this issue adversely to Claimant is "supported by substantial and competent evidence upon the record as a whole...." Unfortunately for the litigants, we must remand this case to the Commission without answering that question because of our doubt as to the basis of the Commission's decision, i.e., whether the basis of the Commission's decision was an issue of fact or a question of law. *See Michler v. Krey Packing Co.,* 363 Mo. 707, 253 S.W.2d 136, 142 (banc 1952).

 Section 287.460.1 mandates that an award in a contested workers' compensation case must be accompanied by findings of fact. *Michler* declared that such a requirement contemplates "an unequivocal affirmative finding as to what the facts are." *Id.* The reasons why such findings are necessary is fully explained in *Michler* thusly:

" 'The Commission is the fact-finding body, and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported.' " ... Sec. 287.[495] provides that 'the findings of fact made by the commission within its powers shall be conclusive and binding', which means, of course, if they are supported by substantial evidence on the whole record.

"That is why the Commission should make a sufficient finding to show whether the basis of their decision was an issue of fact or a question of law....

'We must know what a decision means before the duty becomes ours to say whether it is right or wrong.' ... In Craddock's case, 310 Mass. 116, 37 N.E.2d 508, 513, 146 A.L.R. 116, ... the Court remanded the case because findings of the Industrial Accident Board were 'mere general conclusions unaccompanied by a single finding of fact as a basis to support them'. The Court said: 'The element of the credibility of the witnesses, which was for the board, enters into the disposition of this phrase of the case. In this situation we cannot, from the two naked general conclusions made by the board, "determine with reasonable certainty whether or not correct rules of law have been applied to facts which could properly be found * * * " and such a determination "is a necessary part of the judicial review for which the Workmen's Compensation Act provides." ' (See also Annotations 146 A.L.R. 124, 146 A.L.R. 209; Administrative Law—Davis, Secs. 162–170.) And see Benjamin—Administrative Adjudication in the State of New York (1942), as follows: 'Intelligent judicial review of a quasi-judicial determination is possible only if the deciding officer has made findings of fact which show the actual grounds of decision,—findings sufficiently specific so that the reviewing court may judge, first, whether the findings themselves are supported by the evidence in the record of the quasi-judicial hearing and, second, whether the facts so found are legally sufficient to support the determination. Primarily to provide the necessary basis for intelligent judicial review, therefore, the courts have laid down a requirement that such findings of fact be made....' "

*Id.* at 142–43.

Here, Commission did not make unequivocal affirmative findings of fact as is mandated by § 287.460.1. Instead, it outlined and summarized the testimony of all witnesses appearing at trial, and then, without indicating

what weight or credibility it gave to any of the evidence, concluded as follows:

"[We] find, based on careful consideration of all the evidence presented, that claimant has failed to meet his burden of proof for an injury of December 16, 1992, *and with some reservations* must deny his claim for compensation. *[We] find the facts as presented, that the claimant alleges he continued working on the job into late January, at which time his condition deteriorated to the point where he sought medical treatment, leaving open the question of whether the incident of January 22, 1993, may have been the cause of claimants injuries and current condition of ill.*"[8] (Emphasis ours.)

The Commission's finding that "claimant has failed to meet his burden of proof for an injury of December 16, 1992 ..." is, as in *Michler*, a "confusing and ambiguous way to state a finding of fact and sounds like merely a determination that claimant did not make a prima facie case." *Id.* at 142. The absence from this award of "an unequivocal affirmative finding as to what the facts are" precludes us from making an intelligent and fair review. *See Id.* For example, if we had a finding that Claimant did not suffer injury on December 16, 1992, and that Claimant's testimony which dated his initial symptoms as commencing on that date was not credible, we would know that the decision was based solely on this fact issue. *Id.* However, such finding was not made. Instead, the Commission's statement *"[We] find the facts as presented"* indicates otherwise. The Commission's finding that the Claimant had a *"condition"* which *"deteriorated"* as he continued to work until he finally had to seek medical treatment in late January 1993, coupled with the endorsement that the Commission found *"the facts as presented,"* raises serious questions as to whether the Commission's award resulted from an incorrect application of law. The Commission found, in essence, that Claimant had a "condition" prior to late January 1993. That is consistent with Claimant's alleged December 16, 1992, injury, yet inconsistent with the Commission's "open ... question" about January 22, 1993, being the inception date.

Because the Commission's confusing and ambiguous findings do not lend themselves to an absolute determination, it is possible that it found, as a matter of law, that a compensable "accident" must be manifested by immediate evidence of injury. In fact, no such immediate evidence of injury is required. *Davis v. Butler Manufacturing Company,* 659 S.W.2d 523, 524–25 (Mo.App. 1983).

It may be that the Commission viewed the law to require that Claimant be immediately aware of the disabling nature of his injury at the time of the accident. Likewise, the law does not require such immediate awareness. *Crites v. Missouri Dry Dock and Repair Company,* 348 S.W.2d 621, 624 (Mo.App.1961); *Barker v. Secretary of State's Office,* 752 S.W.2d 437, 442–43 (Mo.App.1988).

Another possibility is that the Commission viewed the law as requiring that Claimant complain to fellow workers at the time of the event. No such contemporaneous complaint is required. A claimant's testimony alone, if believed, constitutes substantial evidence to establish that a claimant sustained an injury arising by accident. *Indelicato v. Missouri Baptist Hospital,* 690 S.W.2d 183, 186 (Mo.App.1985).

The foregoing are intended only as illustrations of our doubt about whether the basis of the Commission's decision was an issue of fact or question of law. However, we deem the Commission's finding that it was denying compensation to Claimant *"with some reservations"* as suggesting that it may have ignored the principle that "[a]ny doubt as to the right of an employee to compensation should be resolved in favor of the injured employee." *See Wolfgeher,* 646 S.W.2d at 783[2].

Lastly, we observe that our inability to review this case is compounded by misstatements made concerning the testimony of certain witnesses. First, the Commission attributed to Claimant the following:

---

8. The Commission adopted and approved the findings of the ALJ verbatim.

*"The claimant testified* [that] on January 22, 1993, he was moving boxes and sofas to remove another water damaged carpet, and *hurt his back again, this time to the extent he sought medical treatment on January 25, 1993."* (Emphasis ours.) Later, when analyzing the Claimant's failure to timely report his injury, the Commission wrote:

"It is interesting to note that the *claimant in his testimony indicated [that] on January 22, 1993,* in moving boxes and sofas to remove a carpet, *he noticed back pain, this time to the extent that he was in pain sufficient to seek medical treatment."* (Emphasis ours.)

Claimant did not so testify. Claimant's testimony was that he helped move sofas and boxes on January 22, 1993, but the balance of the testimony attributed to him is not in the record.

Second, when outlining the testimony of Claimant's co-worker, Curtis Yandell, the Commission wrote: "Yondell [sic] ... testified he was with the claimant on the December 16, 1992, job and noted the claimant suffered *no trip....*" Yandell did not so testify. To the contrary, he testified on December 16, 1992, he was positioned in the middle as the carpet was being carried up the steps and he saw the Claimant *"trip."*

Third, the Commission found that "[t]he record is lacking any facts to establish an injury on December 16, 1992, despite the claimant working in close proximity to co-workers on that day." That finding ignores Claimant's testimony that he was injured on the job on December 16, 1992; testimony which if believed, could be the substantial and competent evidence required for Claimant to meet his burden. *Indelicato,* 690 S.W.2d at 186. Again, on this record, we cannot discern whether the Commission disbelieved Claimant or misapplied the law.

If the basis for the Commission's decision was an issue of fact and hinged on the credibility of Claimant or other witnesses, did mistakes in outlining evidence affect its decision, especially in view of its "reservations" about denying compensation? We leave that to the ALJ and Commission to decide upon remand.[9]

We reverse and remand for further proceedings in accordance with this opinion.

PREWITT, P.J., and PARRISH, J., concur.

---

9. Having reversed on Points I(A) and II, we do not address Point I(B). In Point I(B), Claimant contends that the Commission erred in denying his claim because "Commission's decision was legally incomplete [as] the decision failed to analyze whether or not [Claimant] (1) had good cause for not providing notice within thirty days, or (2) had made a prima facie showing that [Respondents] had not been prejudiced." Under § 287.420, whether Claimant had good cause for not timely reporting his injury or Employer was prejudiced by the lack of notice are issues Com-

mission must resolve. On these questions—as with the date of injury issue—the Commission did not make unequivocal findings as mandated by § 287.460.1. It would be appropriate upon remand and rehearing, if any, that Commission comply with § 287.460.1 in its fact finding *on all issues.* That will ensure that if future appellate review is necessary, the reviewing court can " 'determine with reasonable certainty whether or not correct rules of law have been applied to facts which could properly be found....' " *Michler,* 253 S.W.2d at 143.