STATE OF MISSOURI at the information of HENRY C. M. LAMKIN, Prosecuting Attorney of Callaway County, at the relation of CROCKETT HARRISON, Relator, v. OSA N. TENNYSON.—151 S. W. (2d) 1090.

Court en Banc, May 2, 1941.

*Henry C. M. Lamkin* and *Baker & Baker* for relator.

 

*W. B. Whitlow* and *T. A. Faucett* for respondent.

GANTT, J.—Original action in *quo warranto*. Relator seeks to have respondent, the circuit clerk of Callaway County, ousted as *ex officio* recorder of deeds of said county. At the time of the general election in 1938 the population of Callaway County was less than twenty thousand. (Census of 1930.) At said election respondent was elected circuit clerk. Under the statute he became *ex officio* recorder of deeds. In 1940 the county had a population of 23,094, which fact was duly certified by the census bureau to the Secretary of State. On February 11, 1941, the Governor, assuming that a vacancy existed, appointed relator recorder of deeds of said county. It is admitted that he was duly commissioned; that he subscribed to the oath of office required by law, and that he tendered to the county court a statutory bond as recorder of deeds. The county court refused to approve the bond on the theory that a vacancy did not exist in the office. Relator made demand on respondent for the office, which was refused. The sections of the statute (R. S. Mo. 1939) for consideration follow:

"Sec. 13147—Office of recorder of deeds.—There shall be an office of recorder in each county in the state containing 20,000 inhabitants or more, to be styled, 'The office of the Recorder of Deeds.' "

"Sec. 13149—Circuit clerks to serve in certain counties.—The clerks

of the circuit courts shall be *ex officio* recorders in their respective counties, except in counties containing 20,000 inhabitants or more.''

''Sec. 13150—Clerk to furnish bond.—Every clerk, before entering upon the duties of his office as recorder, shall enter into bond to the state, in the sum not less than one thousand dollars ($1000) nor more than five thousand dollars ($5000) at the discretion of the county court, with sufficient sureties, to be approved by said court, conditioned for the faithful performance of the duties enjoined on him by law as recorder, and for the delivering up of the records, books, papers, writings, seals, furniture and apparatus belonging to the office, whole, safe and undefaced, to his successor.''

''Sec. 13154—Recorders to serve term for which elected.—That in the event any person has been elected or may hereafter be elected to the office of recorder of deeds in a county in which the office is a separate office at the time of such election, such office shall remain a separate office for the entire term for which such person has been or may be elected.''

''Sec. 13155—Election of recorder—when—bond. On the first Tuesday after the first Monday in November, 1934, and every four years thereafter, an election shall be held for said officer of recorder, in each county of the state where the office of clerk of the circuit court and recorder of deeds are separate, and the person so chosen at said election shall, on the first day of January next following, enter upon the duties of his office, first giving bond in the sum of not less than one thousand dollars ($1000) or more than five thousand dollars ($5000), at the discretion of the county court, conditioned for the faithful performance of the duties of his office, with at least two sufficient sureties, to be approved by the county court.''

Relator contends that ''when it was definitely ascertained that the population of Callaway County was more than twenty thousand inhabitants, a new office was immediately created.''

██ The statute expressly creates the office of recorder of deeds in counties of twenty thousand or more population. [Sec. 13147.] It does not expressly create the office in counties of less than twenty thousand population. However, it provides that circuit clerks shall be *ex officio* recorder of deeds in such counties. [Sec. 13149.] It also provides that the circuit clerk in such counties, in addition to giving a bond as circuit clerk (Sec. 13285) shall also give a bond conditioned for the faithful performance of the duties of his office as recorder of deeds. [Sec. 13150.] Of course, a circuit clerk could not perform the duties of an office that did not exist. It follows that the change in the population of said county created no new office.

Relator also contends that the absence of legislation expressly providing the time of separation of the offices of circuit clerk and recorder of deeds, on a statutory change in population, shows that the Legislature intended an instant separation of the offices on official notice of said change.

▮ In this connection it should be noted that the courts indulge a strong presumption against a legislative intent to create a condition that might result in a vacancy in public office. [46 C. J., pp. 971, 972.] It also should be noted that circuit clerks and recorders of deeds are elected at the same general election and each serve for a term of four years.

▮ The statute under consideration became effective June 24, 1933. On that date the offices of recorder of deeds and circuit clerk, *ex officio* recorder of deeds, came into existence. Even so, the Legislature expressly provided that the office of recorder of deeds in counties of twenty thousand or more population, should not be filled until the general election in November, 1934, and every four years thereafter. [Sec. 13155.] It further expressly provided that a recorder of deeds in said counties shall continue in office until the end of the term, regardless of a change in population. [Sec. 13154.] These sections of the statute show that the Legislature intended the question of a decrease in population to be determined as of the date of the election of recorder of deeds rather than determined at the time the census bureau notified the Secretary of State of a change in population.

▮ The Legislature did not expressly provide that, on a statutory increase in population, a circuit clerk should continue as *ex officio* recorder of deeds to the end of his term. However, a change in population does not affect the term of a circuit clerk. He continues as such until the end of his term. In this situation it must be ruled that, by clear implication, the Legislature, on a statutory increase in population, must have intended the circuit clerk to continue as *ex officio* recorder of deeds until the end of his term. It is not conceivable that the Legislature intended to avoid a vacancy on a statutory decrease in population, and, by the same enactment, to create a condition that might cause a vacancy on a statutory increase in population. It follows that the Legislature intended the question of population to be determined as of the date of the election of circuit clerks and recorders of deeds rather than determined at the time the census bureau notified the Secretary of State of the change in population.

There is no vacancy in the office of recorder of deeds of Callaway County, and the writ should be denied. It is so ordered. All concur.