Brenda DAY, Respondent,

v.

WRIGHT COUNTY, Missouri,
Appellant.

No. 23394.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 28, 2000.

Lynette B. Veenstra, Mansfield, for appellant.

James B. Fleischaker, Joplin, for respondent.

Before PREWITT, J., CROW, J., and Barney, C.J.

PER CURIAM.

Wright County, Missouri, ("County") appeals from a judgment of the Circuit Court of Wright County declaring that County owes Brenda Day, County's assessor, ("Assessor") back pay and interest in the sum of $15,200.43, based on a per annum salary of $36,000.00, effective September 1, 1997; and a per annum salary of $38,000.00 (at the rate of $3,166.67 per month), from and after January 1, 1999, for the remainder of her term in office, "subject to any changes required by change in the assessed valuation of Wright County or changes in the statutory maximum." County raises three points of trial court error discussed below.

■ Assessor was County's assessor in 1995. She served on County's salary commission pursuant to section 50.333.3, RSMo 1994. We discern from our review of section 50.333, RSMo 1994, and its later amended versions discussed below, that the General Assembly sought to vest authority in a county salary commission, composed of certain elected county officers, to set compensation for certain county offices, referencing differing salary schedules based on the offices involved. *See Cantwell v. Douglas County Clerk,* 988 S.W.2d 51, 54 (Mo.App.1999).

The statute in effect when the county salary commission met on February 16, 1995, was section 50.333, RSMo 1994. Subsection 7 thereof provided, in pertinent part:

> For the year 1989 and every second year thereafter, the salary commission shall meet in every county ... for the purpose of determining the amount of compensation to be paid to county officials ... [t]he salary commission shall then consider the compensation to be paid for the next term of office for each county officer to be elected at the next general election.

Subsection 8 thereof also provided, in pertinent part that:

> The salary commission shall issue ... a report of compensation to be paid to each officer and the compensation so set shall be paid beginning with the start of the subsequent term of office of each officer.

Furthermore, subsection 9 set out:

> For the meeting in 1989 and every meeting thereafter in the event a salary commission ... fails, neglects or refuses to meet as provided in this section, or in the event a majority of the salary commission is unable to reach an agreement and so reports or fails to certify a salary report to the clerk of the county commission by December fifteenth of any year in which a report is required to be certified by this section, then the compensation being paid to each affected officer on such date shall continue to be the compensation paid to the affected officer during the succeeding term of office.

The salary commission met on February 16, 1995. The minutes of that meeting reflect that Assessor served as chair of the commission. At that meeting, the members of the commission, including Assessor, voted to set the county officers' salaries "at 100% of what the Legislators had set in the RSMo Statutes for each office plus any increases due to increased population or assessed evaluation [sic] or maximum changes."

At the time the salary commission met in 1995, and at the time Assessor was re-elected in November of 1996,[1] the maximum allowable compensation for the office of assessor for Wright County, a county of the third classification, was $32,400.00 per year, pursuant to the schedule contained in section 53.082.1, RSMo 1994.[2]

The legislature, however, amended section 53.082, effective August 28, 1997. *See* L.1997, S.B. 11 § A; § 53.082, RSMo Cum.Supp.1997. In subsection 1, a new and augmented schedule of maximum allowable compensation was included. The same legislative bill also amended portions of section 50.333, RSMo Cum.Supp.1997 which had been previously amended in 1995 and 1996. Nevertheless, none of these changes substantively altered that portion of the foregoing statute which provided that "[t]he salary commission shall ... consider the compensation to be paid for the next term of office for each county officer to be elected at their next general election." *See* §§ 50.333.7, RSMo 1994; RSMo Supp.1995; RSMo Cum.Supp.1997.

County's salary commission met on September 15, 1997, and again on November 13, 1997. As in 1995, Assessor was elected to chair the commission. At the latter meeting, the members of the commission agreed, by a vote of seven to three, to "lower salaries to 82% of the scale," based, as we discern, on the augmented schedule as provided in section 50.082.1, RSMo Cum.Supp.1997. Assessor was one of the three who voted against this proposal.

The record shows that County paid $2,700.00 per month salary to Assessor in September and October of 1997 in accordance with an annual rate of compensation of $32,400.00, as authorized by the schedule set out in section 53.082.1, RSMo 1994. However, thereafter, pursuant to the decision made at the November 13, 1997,

---

1. This election was for her term in office commencing September 1, 1997.

2. Unlike many other county officials, terms for assessors begin on September 1 of the year following their elections, approximately ten months after the election is held. *See* § 53.010.1, RSMo 1994.

meeting of its salary commission, County commenced payment to Assessor of a salary of $2,460.00 per month, based on an annual salary of $29,520.00, which represented 82% of the maximum annual allowable compensation of $36,000.00 for assessors of counties with County's assessed valuation.[3]

A little over a year after the November 13, 1997, meeting, Assessor sought a judgment: (a) declaring that she was entitled to a salary of 36,000.00 a year for the period of September 1, 1997, through the end of December 1998; and (b) declaring that she was entitled to an annual salary of $38,000.00 beginning January 1, 1999. These claims were based upon the changes to the salary schedule for assessors effective September 1, 1997, and upon a change

in County's assessed valuation in 1998.[4] *See* § 53.082.1, RSMo Cum.Supp.1997.

■ As previously set out, the trial court entered a judgment declaring that as of September 1, 1999, Assessor was entitled to receive $15,200.43 in back pay and interest; and declaring she was entitled to a salary of $3,166.67 per month, or $38,000.00 per year, "subject to any changes required by change in the assessed valuation of Wright County or any changes in the statutory maximum." The monetary award of the trial court represented the difference in pay between the amount the trial court found Assessor to be entitled to less the amount County paid to Assessor, plus interest from the date Assessor's petition was filed.[5]

As best we can discern from our review of County's points and attendant argu-

---

**3.** The trial court found that County's assessed valuation in 1996 and 1997 "was between $86,000,000.00 and $99,999,999.00." Section 53.082.1, set salaries for assessors for counties with assessed valuations in that range at $36,000.00 annually, effective September 1, 1997.

**4.** The trial court found that County's assessed valuation in 1998 "was between $100,000,000.00 and $130,999,999.00." The significance of that finding is that section 53.082.1, RSMo Cum.Supp.1997 provided an annual salary for assessors of $38,000.00 for counties with assessed valuations in the range found by the trial court.

**5.** Pursuant to Rule 81.13, Missouri Court Rules (2000), the parties agreed and stipulated, and the trial judge approved, a "Statement of the Case" setting out the trial court's basis for its judgment. "[O]n review of a court-tried case this Court will independently evaluate the trial court's conclusions of law." *Silver Dollar City v. Kitsmiller Const.*, 931 S.W.2d 909, 913 (Mo.App.1996).

The trial court concluded that:
(1) The salary commission had no authority to meet after September 1, 1997, to set the county assessor's salary with an effective date of September 1, 1997, due to the prohibition found in art. I, section 13 "of the Missouri

Constitution regarding *ex post facto* laws and section 50.333.8 ...;"
(2) The failure of the salary commission to meet after August 28, 1997, and prior to September 1, 1997, to approve a change in the salary of Assessor resulted in an automatic increase in the salary of Assessor to 100% of the maximum allowable compensation as authorized by the minutes of the 1995 meeting of the county salary commission and the newly revised schedule set out in section 53.082, RSMo Cum.Supp.1997 which required an increase in Assessor's salary from $32,400.00 to $36,000.00;
(3) That-based on the wording of the 1995 salary commission meeting minutes, authorizing 100% maximum allowable compensation-an increase in Assessor's salary was permitted during her term of office, at the rate of $166.67 per month, beginning January 1, 1999, subject to any additional increases required by any additional changes in the assessed valuation of County or any additional changes in the statutory maximum allowable compensation for the office of assessor during the remainder of Assessor's term of office; and
(4) The amount owed Assessor was readily ascertainable and Assessor was entitled to statutory interest from January 15, 1999, the date of the filing of her petition.

ments, County first contends that the trial court erred in determining that its salary commission was not authorized to meet in 1997 to permit the salary commission to decrease Assessor's salary in 1997 to 82% of the maximum level as set out in section 53.082.1 and .4, RSMo Cum.Supp.1997. In its second point, County asseverates error in the trial court's declaration that Assessor was entitled to receive an automatic increase of her annual salary (to $36,000.00), pursuant to the new, augmented schedule of payments found in section 53.082.1, RSMo Cum.Supp.1997. Finally, in its third point, County posits trial court error in declaring that Assessor was entitled to an increase in her annual salary of an additional $166.67 per month at the per annum rate of $38,000.00, beginning January 1, 1999.

■■■ A primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words in the statute in their plain and ordinary meaning. *Metro Auto Auction v. Director of Revenue,* 707 S.W.2d 397, 401 (Mo. banc 1986); *see also Cantwell,* 988 S.W.2d at 54–55. "Where the language of a statute is clear and unambiguous, we will give effect to the language as written and will not resort to statutory construction" *Cantwell,* 988 S.W.2d at 55. "If construction is necessary, we will construe a statute, or a provision thereof, in context." *Id.* "In order to shed light on a statute's meaning, appellate courts may consider other statutes that involve similar or related subject matter." *Id.* "Further, 'statutes relating to the same subject are to be considered together and harmonized if possible so as to give meaning to all provisions of each.' " *Id.* (quoting *State ex*

*rel. Lebeau v. Kelly,* 697 S.W.2d 312, 315(Mo.App.1985)). "When two statutes appear to conflict, we will attempt to reconcile them and give effect to both." *Id.* at 56. "If the conflict is otherwise irreconcilable, the general statute must yield to the more specific statute." *Cantwell,* 988 S.W.2d at 56; *see also Habjan v. Earnest,* 2 S.W.3d 875, 881 (Mo.App.1999).

## I.

■■ In our review of County's first point, we observe that section 53 .082.2, RSMo Cum.Supp.1997 sets out that:[6]

> The compensation for county assessors in second, third and fourth classification counties for the term of office beginning September 1, 1997, shall be calculated pursuant to the salary schedule in this section using the percentage increase approved by the county salary commission when establishing the compensation for the office of county assessor at the salary commission meeting in 1997. This salary shall become effective on September 1, 1997.

Furthermore, section 53.082.4, RSMo Cum.Supp.1997 provides that:

> The county assessor in any county, except a first classification county, shall not, except upon two-thirds vote of all the members of the salary commission, receive an annual compensation in an amount less than the total compensation being received for the office of county assessor in the particular county for services rendered or performed on the date the salary commission votes.

County contends, in particular, that section 53.082.4, RSMo Cum.Supp.1997, stands as authority for the salary commission to reduce the salary of the Assessor in 1997,

---

**6.** Hereafter all statutory references are to RSMo Cum.Supp.1997, unless otherwise indicated.

after approval by two-thirds vote of all the members of the salary commission. County, therefore, maintains that its salary commission was empowered to meet and did meet on November 13, 1997, to reduce Assessor's salary to 82% of the maximum allowable, per section 53.082.1, RSMo Cum.Supp.1997. We disagree.

As previously set out, when two statutes appear to conflict and are otherwise irreconcilable the general statute must yield to the more specific statute. *Cantwell,* 988 S.W.2d at 56. We determine section 53.082.4, RSMo Cum.Supp. 1997 must give way to section 53.082.1, RSMo Cum.Supp.1997. County's argument completely ignores the very specific provisions set out in section 53.082.1, RSMo Cum.Supp.1997, which reads, in pertinent part:

> The provisions of this section shall not permit or require a reduction in the amount of compensation being paid for the office of assessor on September 1, 1997.

Thus, considering the plain and ordinary meaning of the language of section 53.082.1, RSMo Cum.Supp.1997, *Metro Auto Auction v. Director of Revenue,* 707 S.W.2d at 401, we observe it specifically relates to the entirety of section 53.082, RSMo Cum.Supp.1997 and expressly prohibits a reading of any of the subsections of section 53.082, RSMo Cum.Supp.1997 requiring a reduction of Assessor's salary *in 1997.* We therefore determine that County's salary commission was not permitted to meet after August 31, 1997, to reduce Assessor's salary, so as to be effective during her present term of office.

Accordingly, this Court affirms that part of the trial court's judgment holding that County's salary commission's reduction of Assessor's salary, attempted November 13, 1997, was in excess of County's salary commission's power to act. Point denied.[7]

## II.

County next asserts the trial court erroneously declared Assessor was to receive the maximum allowable compensation for assessors under the schedule set out in section 53.082.1, RSMo Cum.Supp.1997. County asserts, and the record shows, that the trial court based its conclusion upon the language of the 1995 salary commission report which set county officer salaries at "100% of what the Legislators *had set* in the RSMo Statutes for each office ...." (Emphasis added.) County maintains that since the new schedule, as found in section 53.082.1, RSMo Cum. Supp.1997 had not been enacted it could not have been considered by the 1995 salary commission when it made its report on compensation for county officers. We agree.

"Statutes providing compensation for an officer are strictly construed against the officer."*Becker v. St. Francois County,* 421 S.W.2d 779, 783 (Mo.1967). Although the 1995 report of County's salary commission spoke in terms of authorizing "any increases due to increased population or assessed evaluation [sic] or maximum changes," our review of the pertinent provisions of section 50.333, RSMo 1994–particularly subsection 7 thereof which provided the extant mechanism for determining the compensation payable to county officers in 1995–reveals

---

7. While the trial court improperly based its judgment on an incorrect premise, i.e., the prohibition regarding *ex post facto laws*-largely inapplicable because *ex post facto laws* pertain to criminal jurisprudence, *see Holden v. Antom, Inc.,* 930 S.W.2d 526, 528 (Mo.App.

1996)—"[o]n appeal, our primary concern is the correctness of the result, not the route taken to reach it." *Corrigan v. Armstrong, Teasdale, Schlafly, Davis & Dicus,* 824 S.W.2d 92, 94 (Mo.App.1992).

that this section gave no such empowerment to the salary commission to provide for an *automatic* increase in county officer salaries "due to increased population or assessed evaluation [sic] or maximum changes."[8] While we are cognizant that section 53.082.2, RSMo Cum.Supp.1997 provides that:

> [C]ompensation for county assessors ... for the term of office beginning September 1, 1997, shall be calculated pursuant to the salary schedule in this section using the percentage increase approved by the county salary commission when establishing the compensation for the office of county assessor at the salary commission meeting in 1997.

we interpret the foregoing sub-section as only permitting County's salary commission to have met between August 28 and August 31, 1997. This is because interpreting section 53.082.2, RSMo Cum.Supp. 1997 as permitting the salary commission to meet to *increase* the salary of the Assessor *after* the commencement of Assessor's new term of office on September 1, 1997, runs afoul of Mo. Const. art. VII, § 13 (1945, as amended). This state constitutional provision sets out, subject to exceptions not applicable herein that:

> The compensation of state, county and municipal officers shall not be increased during the term of office; nor shall the term of any officer be extended.

Mo. Const. art. VII, § 13 (1945, as amended); *see also Habjan,* 2 S.W.3d at

886. However, statutory language will be interpreted to make it constitutional whenever possible. *State v. Davis,* 685 S.W.2d 907, 911 (Mo.App.1984); *see St. Louis Bd. of Educ. v. Shannon,* 640 S.W.2d 121, 122 (Mo. banc 1982). Appellate courts have the duty to adopt the reading of a statute that is constitutional when alternate readings are possible. *See Corvera Abatement Techs., Inc. v. Air Conserv. Comm'n,* 973 S.W.2d 851, 861 (Mo. banc 1998). While County's salary commission could have met between August 28 and August 31, 1997, to consider increasing Assessor's salary in conformance with the new augmented schedule, section 53.082.1, RSMo Cum. Supp.1997, it did not do so. Accordingly, the trial court erred in its declaration that Assessor was entitled to a judgment authorizing her to be paid a salary, commencing September 1, 1997, on the basis of $36,000.00 per annum, using the augmented schedule as set out in section 53.082.1, RSMo Cum.Supp.1997. Point sustained.

### III.

 County asserts, as its final point, that the trial court erred in adjudging that Assessor was entitled to an increase in her salary of $166.67 per month, on the basis of a per annum salary $38,000.00, because of an increase in the assessed valuation of the county in 1998. County reasons that art. VII, § 13 of the Missouri Constitution prohibits an increase

---

8. *Compare* § 50.333.7, RSMo Supp.1995, effective August 28, 1995–over six months after the Salary Commission's meeting-which specifically provided that in counties where offices and officers' salaries have been set at 100% of the maximum allowable compensation, "increase[s] shall be in addition to any increase mandated by an official's salary schedule because of changes in assessed valuation during the current term." *Id.* We presume that the legislature was aware of the absence of this "new" provision in the predecessor versions. "When the legislature amends a statute, it is presumed to have intended the amendment to have some effect." *Parrott v. HQ., Inc.,* 907 S.W.2d 236, 240 (Mo.App.1995). "A new statute must be construed in light of the defect it seeks to remedy and the usages, circumstances, and conditions existing at the time the change was made." *Id.* "Missouri Courts do not presume that the legislature enacts meaningless provisions." *Id.; see also Tunstill v. Eagle Sheet Metal Works,* 870 S.W.2d 264, 271 (Mo.App. 1994).

in Assessor's compensation during her term of office. While County's argument appears facially correct, we do not review this point on the basis of a state constitutional violation because County did not preserve this issue in the court below.[9] It is clear, nevertheless, that the trial court bottomed its conclusion that Assessor was entitled to an annual salary of $38,000.00, beginning January 1, 1999, upon County's 1995 salary commission's report language providing for increases "due to increased population or assessed [valuation] or maximum changes." However, as previously set out in our discussion of County's second point, section 50.333, RSMo 1994 did not authorize a salary commission to provide for an *automatic* increase in an officer's compensation relating to unknown, *future* increased changes in a County's assessed valuation. The same reasoning preventing us from affirming the trial court's determination as to Point Two likewise compels us to conclude that the trial court erred in declaring that Assessor was entitled to an annual salary of $38,000.00 beginning January 1, 1999. Point sustained.

That portion of the judgment declaring Assessor is entitled to receive an annual salary of $36,000.00 commencing September 1, 1997, is reversed.

That portion of the judgment declaring Assessor is entitled to receive an annual salary of $38,000.00, beginning January 1, 1999, is reversed.

That portion of the judgment awarding Assessor back pay in the amount of $14,520.00, together with $680.40 in interest, is also reversed.

That portion of the judgment declaring that the county salary commission had no authority to reduce Assessor's salary for her term in office commencing September 1, 1997, is affirmed, as modified hereafter. Assessor is entitled to be paid an annual salary of $32,400.00 during her present term in office, which commenced September 1, 1997. While County paid Assessor at the correct monthly rate of $2,700.00 for September and October of 1997, County was in error in reducing this amount to $2,460.00 per month beginning in November of 1997. Accordingly, this case is remanded to the Circuit Court of Wright County for a determination, consistent with this opinion, of the total amount of back pay County owes Assessor as compensation for her services to the County, together with interest at the rate of 9% from the date of the filing of her petition. § 408.020, RSMo 1994.

---

9. Aside from the question of this Court's jurisdiction to consider a constitutional challenge, no party has raised or preserved any constitutional challenge to section 53.082.2, RSMo Cum.Supp.1997. "It is firmly established that a constitutional question must be presented at the earliest possible moment 'that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived.'" *Callier v. Director of Revenue*, 780 S.W.2d 639, 641 (Mo. banc 1989)(quoting *Meadowbrook Country Club v. Davis*, 384 S.W.2d 611, 612 (Mo.1964)).