Betty P. DYKES, Respondent,

v.

GENTRY COUNTY, Missouri,
Appellant.

No. WD 65188.

Missouri Court of Appeals,
Western District.

Feb. 28, 2006.

Application for Transfer to Supreme Court
Denied May 2, 2006.

Application for Transfer Denied
June 30, 2006.

David A. Baird, Maryville, MO, for appellant.

Hugh D. Kranitz, St. Joseph, MO, for respondent.

Before HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS, Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

Gentry County, Missouri, appeals a declaratory judgment pronouncing that the County owes its former assessor, Betty P. Dykes ("Dykes"), back pay in the sum of $26,000, plus statutory interest at a rate of 9% per annum from February 5, 2003. We affirm.

On November 14, 1995, the Gentry County Salary Commission ("Commission") met in regular session and directed that salaries for county officers be "set at 85 percent of the maximum allowable compensation." At the time of the Commission's 1995 meeting, the pay schedule contained in the governing state statute (section 53.082.1, RSMo 1994) provided that, based on Gentry County's assessed valuation, the maximum allowable compensation for the office of Gentry County Assessor was $30,000 per year.

Dykes was elected to the office of Gentry County Assessor in November 1996 for a term of office beginning September 1, 1997.[1] On April 29, 1997, the Commission once again met in regular session. The Commission's minutes state that at this meeting, a motion was made "to take an increase [to] 100% of the maximum allowed by law." The motion passed by a vote of 8–0, and the same day, the Commission directed that salaries for county officers be "set at 100 percent of the maxi-

mum allowable compensation." At the time of the Commission's 1997 meeting, the pay schedule contained in the governing state statute (which was still section 53.082.1, RSMo 1994) provided that, based on Gentry County's assessed valuation, the maximum allowable compensation for the office of Gentry County Assessor was still $30,000 per year.

On July 14, 1997, the governor signed into law Conference Committee Substitute for House Committee Substitute for Senate Substitute for Senate Bill 11 ("Senate Bill 11"), which repealed and reenacted as amended many statutes relating to the compensation of county officials, including section 53.082, RSMo 1994. *1997 Mo. Laws 246, 247, 257, 271.* As the legislation contained no emergency clause, its effective date was August 28, 1997. *See Mo. CONST. art. III, § 29; § 1.130,* RSMo 1994. In particular, the amended section 53.082.1 set forth a new and augmented maximum allowable compensation schedule for county assessors in counties of the second, third, and fourth classification, which includes Gentry County. The pay schedule contained in section 53.082.1, RSMo Cum. Supp.1997, provided that, based on Gentry County's assessed valuation, the maximum allowable compensation for the office of Gentry County Assessor was $32,000 per year.

The Commission did not meet between April 29, 1997 and August 31, 1997. Dykes began her term as the Gentry County Assessor on September 1, 1997, and served in that capacity until her term of office expired on August 31, 2001. The County paid Dykes an annual salary of $25,500 (*i.e.,* 85% of $30,000) during each of the four years of her term in office.

---

1. Unlike many other county officials, terms for assessors begin on September 1 of the year following their elections, approximately ten months after the election is held. *See* § 53.010.1, RSMo 1994 & 2000.

On February 5, 2003, Dykes filed a Petition for Declaratory Judgment against the County in the Circuit Court of Gentry County, seeking a determination that the County had underpaid her during each year of her four-year term of office and an award of "the appropriate sum to compensat[e] her for salary earned but not received, including interest thereon." After reviewing the written arguments submitted by the parties, as well as copies of the pertinent documents, on January 31, 2005, the court ruled that during each of the four years of her term of office, Dykes should have received 100% of the "maximum allowable compensation" established by state law as of September 1, 1997, the day she took office. Accordingly, the court declared that the County "underpaid [Dykes] the sum of $6,500.00 per year for a four year term from September 1, 1997 to the last day of August, 2001, for a total of $26,000.00," and that she was "entitled to a judgment against [the County] for the sum of $26,000.00 plus interest from the 5th day of February, 2003, at a rate of 9%, for a total of $4647.95 to date of judgment." This timely appeal by Gentry County followed.

The legal issue presented in this appeal is simple: On the stipulated facts before the circuit court, to what annual salary was Betty P. Dykes entitled under Missouri law when she began her four-year term of office as the Gentry County Assessor on September 1, 1997? The court determined that it was $32,000 and concluded, as a result, that County had underpaid her by $6,500 ($32,000 minus $25,500) during each of the four years of her term in office. We hold that this conclusion of law, which we review *de novo* and to which we pay no deference on appeal, *Hinton v. Dir. of Revenue*, 21 S.W.3d 109, 112 (Mo.App. W.D.2000), was entirely correct.

As amended by Senate Bill 11, section 53.082.1 states, in relevant part, that "[t]he county assessor in any county, other than in a first classification county, shall receive an annual salary computed as set forth in the following schedule provided in this subsection." *§ 53.082.1,* RSMo Cum. Supp.1997. As noted *supra,* the schedule set forth in subsection 1 of the amended section 53.082 provides that, based on Gentry County's assessed valuation, the maximum annual salary for the office of Gentry County Assessor is $32,000 per year.

Meanwhile, subsection 2 of the amended section 53.082, which was entirely new in Senate Bill 11 and did not appear in any form in the prior version (RSMo 1994) of the statute, *1997 Mo. Laws 258,* provides:

The compensation for county assessors in second, third and fourth classification counties for the term of office beginning September 1, 1997, shall be calculated pursuant to the salary schedule in this section using the percentage increase approved by the county salary commission when establishing the compensation for the office of county assessor at the salary commission meeting in 1997. This salary shall become effective on September 1, 1997.

*§ 53.082.2,* RSMo Cum.Supp.1997.

In enacting subsections 1 and 2 of the amended section 53.082, the General Assembly spoke in clear, specific, and completely unambiguous terms as to its intent. It is undisputed that, at the time the amended section 53.082 went into effect on August 28, 1997, Dykes' term of office as a county assessor in Gentry County (which is a county of the third classification) was to begin on September 1, 1997. Therefore, her annual compensation was to "be calculated pursuant to the salary schedule in this section using the percentage increase approved by the county salary commission when establishing the compensation for

the office of county assessor at the salary commission meeting in 1997." *Id.* It is also undisputed that the salary schedule set forth in the amended section 53.082.1 provided that the maximum annual salary for the office of Gentry County Assessor was $32,000 per year, and that, at its meeting in 1997, the Commission directed that salaries for Gentry County officers be "set at 100 percent of the maximum allowable compensation" established by state law. Accordingly, when the amended section 53.082 took effect on August 28, 1997, the General Assembly directed that Dykes' salary for her upcoming term of office as Gentry County Assessor be set, by operation of law, at $32,000, "effective on September 1, 1997." *Id.* Therefore, the circuit court correctly declared that the County had underpaid Dykes by $6,500 ($32,000 minus $25,500) during each of the four years of her term in office, and that she was entitled to a judgment against Gentry County for the sum of $26,000 plus 9% interest thereon beginning February 5, 2003 (the date she filed her petition).

Nothing in Gentry County's brief, including *Day v. Wright County*, 69 S.W.3d 485, 489–90 (Mo.App. S.D.2000), in which the Southern District reached a contrary conclusion in a case involving similar facts and upon which the County relies heavily, convinces us otherwise.

To begin with, *Day* is factually distinguishable. In *Day*, the language of the county salary commission's 1995 report "set county salaries 'at '100% of what the Legislators *had set* in the RSMo Statutes for each office[.]' " *Id.* at 491 (emphasis in original). Therefore, the Southern District accepted Wright County's argument that "since the new schedule, as found in sec-

tion 53.082.1, RSMo Cum.Supp.1997, had not been enacted it could not have been considered by the 1995 salary commission when it made its report on compensation for county officers." *Id.* In the case *sub judice*, however, the language used by the Commission during and after its April 29, 1997 meeting was not backward-looking, as was the case in *Day*. Instead, the motion made was "to take an increase [to] 100% of the maximum allowed by law." Likewise, the Commission's order of the same day directed that salaries for county officers be "set at 100 percent of the maximum allowable compensation." [2]

Gentry County nevertheless argues that "it is more likely that the Salary Commission members meant 'the maximum allowable compensation *today, the day we vote*,' " not " 'the maximum allowable compensation *as it exists on the day the office-holder begins their term including any future increases which are enacted*.' " We disagree, because if the Commission had such an intent here, neither its minutes nor its order reflect it. Moreover, as noted *supra* and as will be discussed further below, even if that *was* the Commission's intent, the County's argument completely ignores the manifest intent of the General Assembly in enacting the revised section 53.082, which trumps any contrary intent by the Commission with regard to the annual salary of the Gentry County Assessor.

Gentry County also correctly notes that the court in *Day* held that section 53.082.2, RSMo Cum.Supp.1997, did not result in an "*automatic* increase in county officer salaries" because while Wright County's "salary commission could have met between August 28 and August 31, 1997, to consider

---

**2.** The legislature has defined the phrase "maximum allowable compensation" to mean "the highest compensation which may be paid to [a] specified officer or office in the particular county based on the salary schedule established by law for the specified officer or office." *§ 50.333.11,* RSMo Cum.Supp. 1997.

increasing [the affected assessor's] salary in conformance with the new augmented schedule, section 53.082.1, RSMo Cum. Supp.1997, it did not do so." *Id.* at 492 (emphasis in original). In so holding, the court construed section 53.082.2, RSMo Cum.Supp.1997, "as only permitting County's salary commission to have met between August 28 and August 31, 1997" to make the statutory increases effective. *Id.* To hold otherwise, the court reasoned, would run afoul of article VII, section 13 of the Missouri Constitution of 1945 (as amended), which provides, subject to certain exceptions, that: "The compensation of state, county and municipal officers shall not be increased during the term of office; nor shall the term of any officer be extended." *Id.*

As to this issue, we cannot agree with the court's reasoning in *Day*. The critical assumption underlying the Southern District's holding in *Day* (and Gentry County's argument here) was that the salary commission *was required* to have met between August 28 and August 31, 1997 in order to make the statutory salary increases set forth in section 53.082.1, RSMo Cum.Supp.1997, effective. However, the *Day* court did not identify anything in the amended section 53.082 which required that such a meeting take place before the increases in maximum allowable compensation (and resulting salaries) for county assessors made by Senate Bill 11 could become effective. In fact, as noted *supra*,

section 53.082.2, RSMo Cum.Supp.1997, contains explicit directions to the contrary, because it mandates that "[t]he compensation for county assessors in second, third and fourth classification counties for the term of office beginning September 1, 1997" must "be calculated pursuant to the salary schedule in this section using the percentage increase approved by the county salary commission when establishing the compensation for the office of county assessor at the salary commission meeting in 1997. This salary shall become effective on September 1, 1997."

In requiring the use of such an explicitly retrospective approach, the General Assembly clearly envisioned a potential *automatic* increase in the salaries of county assessors in second, third, and fourth classification counties "for the term of office beginning September 1, 1997" which did not depend on the results of county salary commission meetings held between August 28 and August 31, 1997, but which became "effective on September 1, 1997" by operation of law. *§ 53.082.2,* RSMo Cum Supp. 1997; *accord Op. Mo. Atty. Gen. No. 137– 97* (August 26, 1997).[3] Indeed, it appears that the General Assembly's intent in enacting the revised section 53.082 was to *preclude* or *preempt* county salary commissions from attempting to negate the provisions thereof, because section 53.082.1, RSMo Cum.Supp.1997, which is essentially ignored in Gentry County's brief, states: "The county assessor in any

---

3. "Of course, an opinion of the Attorney General is not binding upon the courts or the citizenry, but it may be, and often is, persuasive." *Mesker Bros. Indus., Inc. v. Leachman,* 529 S.W.2d 153, 158 (Mo.1975). As further noted in the cited Attorney General opinion, which specifically addressed the issue and we find to be highly persuasive here, section 53.082, RSMo Cum.Supp.1997, does not, as claimed by Gentry County, violate article VII, section 13 of the Missouri Constitution as applied to Dykes, because:

[T]he term of office of [any] county assessor elected in November, 1996 does not commence until September 1, 1997 pursuant to Section 53.010. Senate Bill 11 is effective August 28, 1997 which is prior to the county assessor's term of office commencing on September 1, 1997. Therefore, any increase in the compensation of a county assessor resulting from the enactment of Senate Bill No. 11 is not prohibited by Article VII, Section 13.

county, other than in a first classification county, *shall receive* an annual salary computed as set forth in the following schedule provided in this subsection.... The provisions of this section *shall not permit or require* a reduction in the amount of compensation being paid for the office of assessor on September 1, 1997." *§ 53.082.1,* RSMo Cum.Supp.1997 (emphasis added).

■ Gentry County also argues that under the salary commission procedures as enacted by the legislature, the increase mandated by the General Assembly in 1997 "was not applicable to the office of Gentry County Assessor until the term commencing September 1, 2001." Here, the County relies on section 50.333.7, RSMo Cum.Supp.1997, which states that:

> For the year 1989 and every second year thereafter, the salary commission shall meet in every county ... for the purpose of determining the amount of compensation to be paid to county officials.... The salary commission shall ... consider the compensation to be paid for the next term of office for each county officer to be elected at their next general election.

Based on this statute, Gentry County argues that at the Commission's meeting on April 29, 1997, after which it directed that the salaries for county officers be "set at 100 percent of the maximum allowable compensation," the Commission was only lawfully authorized to consider the compensation to be paid to the county assessor elected at the next general election involving that office, which was to be held in November 2000 for a term commencing on September 1, 2001. Accordingly, Gentry

County contends the correct multiplier was not 100% of $32,000 (as found by the circuit court), but, at most, only 85% of $32,000.

While the County's argument is supported by the unambiguous language of section 50.333.7, RSMo Cum.Supp.1997, we cannot, as the County would evidently have us do, blithely ignore the equally unambiguous commands of section 53.082.2, RSMo Cum.Supp.1997, which, as we have already observed, expressly and specifically mandates that "[t]he compensation for county assessors in second, third and fourth classification counties for the term of office beginning September 1, 1997, shall be calculated pursuant to the salary schedule in [section 53.082.1, RSMo Cum.Supp.1997] using the percentage increase approved by the county salary commission when establishing the compensation for the office of county assessor at the salary commission meeting in 1997," and further providing that "[t]his salary shall become effective on September 1, 1997."[4]

■ As correctly noted by the circuit court in its judgment, we are faced with a situation where two unambiguous statutes relating to the same subject matter are in apparent conflict. "Where two statutes concerning the same subject matter, when read individually, are unambiguous, but conflict when read together, we will attempt to reconcile them and give effect to both." *Habjan v. Earnest,* 2 S.W.3d 875, 881 (Mo.App. W.D.1999). However, this is impossible to do here, because while section 50.333.7, RSMo Cum.Supp.1997, looks *forward* to "the next term of office for each county officer to be elected at their

---

4. For that matter, nor can we simply overlook section 53.082.1, RSMo Cum.Supp.1997, which states that "[t]he county assessor in any county, other than in a first classification county, shall receive an annual salary computed as set forth in the following schedule provided in this subsection" and that "[t]he provisions of this section [*i.e.*, § 53.082, RSMo Cum.Supp.1997] shall not permit or require a reduction in the amount of compensation being paid for the office of assessor on September 1, 1997."

next general election,"[5] section 53.082.2, RSMo Cum.Supp.1997, looks *backward* to "the percentage increase approved by the county salary commission when establishing the compensation for the office of county assessor at the salary commission meeting in 1997."

 " 'If the conflict is otherwise irreconcilable, the general statute must yield to the more specific statute.' " *Day,* 69 S.W.3d at 490 (*quoting Cantwell v. Douglas County Clerk,* 988 S.W.2d 51, 56 (Mo. App. S.D.1999)); *see also Habjan,* 2 S.W.3d at 881 (noting that if the conflicting statutes "cannot be reconciled, the more specific will control over the more general.") There is no question that section 53.082.2 is much more specific than section 50.333.7, both in terms of the particular county offices affected and the means by which the corresponding officeholders' salaries are to be set. Accordingly, section 50.333.7, RSMo Cum.Supp.1997, must give way to section 53.082.2, RSMo Cum.Supp. 1997, and we must reject the County's argument that the former statute controls here.

Furthermore, "[w]hen the legislature amends a statute, it is presumed to have intended the amendment to have some effect." *Parrott v. HQ, Inc.,* 907 S.W.2d 236, 240 (Mo.App. S.D.1995) (internal quotation marks omitted). As noted *supra,* section 53.082, RSMo 1994, did not contain anything similar to the provisions of section 53.082.2, RSMo Cum.Supp.1997. In fact, the prior section 53.082 appears to have left the issue of compensation to be determined by means of the general statutory scheme set forth in section 50.333, RSMo 1994. However, when, in 1997, the General Assembly added the completely new language of the amended section 53.082.2, it effectively restructured the compensation scheme throughout the State of Missouri for county assessors in second, third, and fourth class counties assuming office on September 1, 1997, increasing their maximum salaries and pegging them to the results of the county salary commission meetings held earlier in 1997, and also setting the effective date of their increased compensation to September 1, 1997. Because the interpretation urged by Gentry County would make most of the revised statutory language mere surplusage, with no possible practical effect until another four years had passed, we reject it as inconsistent with the General Assembly's manifest intent that it take binding effect as of September 1, 1997. While we are cognizant of the financial problems experienced by many small counties in Missouri, such as Gentry County, and also recognize the burden a judgment such as this may place on county budgets, we are bound to enforce the clear legislative intent expressed by the plain language of the applicable statutes.

The judgment of the trial court is affirmed.

All concur.

---

**5.** This court held as much in *Habjan,* 2 S.W.3d at 881.