### Georgia MAXWELL, Recorder of Deeds, Appellant,

v.

### DAVIESS COUNTY, Missouri, and the Daviess County Commissioners, David Holcomb, David Tolen and Danny Heldenbrand, Respondents.

#### No. WD 65715.

Missouri Court of Appeals,
Western District.

May 9, 2006.

Robert Cowherd, Chillicothe, MO, for Appellant.

D. Keith Henson, St. Louis, MO, for Respondents.

Before BRECKENRIDGE, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Georgia Maxwell, elected to the office of Recorder of Deeds of Daviess County, Missouri, appeals the circuit court's denial of her writ of mandamus to compel the Daviess County Commission to pay her the same cumulatively added percentage cost-of-living adjustment to her salary as was paid to other county officeholders. We conclude that the circuit court's decision denying her relief was correct.

Daviess County is a third-class, non-chartered county and is governed by a county commission. Prior to December 31, 2002, as provided for in Missouri law, the county office of recorder of deeds was held as an ex-officio office by the same person holding the position of Clerk of the Circuit Court of Daviess County. The salary and cost-of-living compensation for this ex-officio office was under the fiscal control of the circuit court and was paid for by the State of Missouri. However, the salary of the deputy recorder of deeds was set and paid by the Daviess County Commission ("County Commission"), including the cost-of-living salary adjustments given to other county officers. Georgia Maxwell held a deputy recorder of deeds position prior to December 31, 2002.

On November 26, 2001, the Daviess County Salary Commission ("Salary Commission") met and set the salaries for county officeholders. The actions of the Salary Commission are reflected in its meeting minutes, which said:

[T]he salaries for the offices whose next term of office begins during the calendar year 2003 should be increased by cost of-living adjustments as provided for by Section 50.333.12 RSMo 2000. [It is further moved] that said salaries shall be adjusted each year on the office's date of incumbency by the same percentage increase, if any, as awarded to all county employees. All cost-of-living adjustments shall be calculated on the base salary and added to the salary of the previous year. The base salary shall be the salary established by the valuation tables for the year 2003, as set by the legislature.

The report of the Salary Commission's action, which was required to be filed by section 50.333.8,[1] said that the Salary Commission met "pursuant to law to establish compensation for county officers to be paid to such officers during the next term of office beginning in 2003 for the officers affected." The report further stated: "[C]ounty officer's salaries set at 100 percent of the allowable compensation plus an annual cost-of-living allowance equal to the same percentage awarded to county employees."

On December 10, 2001, the Daviess County Commissioners ("County Commissioners") voted to separate the office of the Recorder of Deeds from the office of the Clerk of the Circuit Court, pursuant to section 59.042. Georgia Maxwell was elected to the newly-separated office of the Recorder of Deeds of Daviess County on November 5, 2002. She took office on January 1, 2003, and was paid a salary of $34,000, as designated by section 50.334.1, plus a 3% cost-of-living adjustment, for a total of $35,020 for the year 2003. In 2004, she was paid $34,000, plus 5.2% (3% plus 2.2%), for a total of $35,768.

On August 12, 2004, Maxwell filed a petition for a writ of mandamus in the Circuit Court of Daviess County, because

**1.** All statutory references are to Missouri Revised Statutes, 2000, unless otherwise noted.

she believed that she was being paid improperly under the applicable state law. She contended that if the Salary Commission authorizes a cost-of-living component, the language of section 50.333.12, which requires that "the percentage increase shall be the same for all county officers, not to exceed the percentage increase given to the other county employees," means that she is entitled to the cumulative total of cost-of-living increases previously acquired by other officeholders who have apparently held their offices for multiple years. Specifically, she contended that other officeholders received 12.7% cost-of-living raises (representing cumulative increases of 1.4% for 1999, 2.3% for 2000, 3% for 2001, 3% for 2002 and 3% for 2003) as opposed to the 3% for 2003 which she received.

In ruling in favor of the County Commissioners on the petition on June 10, 2005, the circuit court said:

> No legal authority exists for the Daviess County Commissioners, nor the individual commissioners thereof, to grant [Maxwell] cost of living pay increases granted to other county officeholders in the years 1999, 2000, 2001, and 2002, when [Maxwell's] office, Recorder of Deeds, was not a county funded position. The office, in fact, did not exist as a separate county funded office until January 1, 2003.

The court went on to say: "[Maxwell's] claim for pay 'equal' (emphasis added by the court) to certain other officeholders,

while understandable, has no basis in the law nor facts."

In her sole point on appeal, Maxwell contends that the circuit court erred in quashing her petition for a writ of mandamus, because section 50.333.12 requires the County Commission to pay all officeholders the same percentage cost-of-living adjustment regardless of when their office came into existence. She specifically contends that the language "the percentage increase shall be the same for all county officers, not to exceed the percentage increase given to the other county employees" in section 50.333.12 creates a "consistency requirement." She interprets this to mean that if any officeholder is given a cumulatively added total of annual cost-of-living increases, for multiple years of service that all officeholders must be given the same.[2] The interpretation of section 50.333.12, relating to cost-of-living increases, is a case of first impression.

Our review of the circuit court's action is governed by the standards established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), that we may reverse only if the trial court's judgment is not supported by substantial evidence, is against the weight of the evidence, or incorrectly declares or applies the law. *Irvin v. Kempker*, 152 S.W.3d 358, 360 (Mo.App. W.D.2004). However, where the sufficiency of the evidence is not controverted, we are not bound by the circuit court's conclusions of law. *Standard Prof'l Servs., Inc. v. Tow-*

---

2. In the joint stipulation of facts filed with the circuit court in the mandamus action, it was agreed that the county clerk, prosecuting attorney, and presiding commissioner in 2003 received four cumulatively added cost-of-living components authorized for the years 1999–2003, totaling 11.3%. The associate commissioners, sheriff, assessors, and other officers received five cumulatively added cost-of-living components for those years, totaling 12.7%. In oral argument, the parties made

reference to the fact that the largest number of cost-of-living increases accumulated by any office actually began in 2000, totaling 11.3%. Our further review of salary information filed in the mandamus action confirms this. This discrepancy does not affect our decision, however, because the issue is not the number of years of cumulative increases that might have accrued over time to a particular officeholder, but when a cost-of-living increase begins to accrue for a particular officer.

*ers,* 945 S.W.2d 693, 694 (Mo.App. E.D. 1997). The interpretation of statutory language is a question of law, and our review of it is de novo. *Psychiatric Healthcare Corp. of Mo. v. Dep't of Soc. Servs.,* 100 S.W.3d 891, 899 (Mo.App. W.D.2003). Because this case involves a question of law, we review "the trial court's determination independently, without deference to that court's conclusions." *Id.* (quoting *Lakin v. Gen. Am. Mut. Holding,* 55 S.W.3d 499, 503 (Mo.App. W.D.2001).

▬ The remedy of a writ of mandamus is only appropriate where a party has "a clear duty to perform a certain act." *State ex rel. City of Crestwood v. Lohman,* 895 S.W.2d 22, 27 (Mo.App. W.D.1994) (citing *State ex rel. City of St. Louis v. Mummert,* 875 S.W.2d 108, 109 (Mo. banc 1994)). The purpose of mandamus is to require the performance of a duty already defined by the law. *Id.* (relying on *State ex rel. Phillip v. Pub. Sch. Ret. Sys.,* 364 Mo. 395, 262 S.W.2d 569, 573 (banc 1953)). Thus, mandamus enforces existing rights, but may not be used to establish new rights. *Id.* (citing *State ex rel. City of Blue Springs v. Rice,* 853 S.W.2d 918, 920 (Mo. banc 1993)). Therefore, in order to prevail, Maxwell must demonstrate that the County Commission had a clear duty existing under the current law to pay her a cost-of-living addition to her salary, the percentage amount of which was calculated on cumulative cost-of-living increases granted to other officeholders prior to the time she assumed her office.

We first address the issue of when Maxwell's office came into existence. Maxwell contends that the office of recorder of deeds has always existed, and that, therefore, the County Commission could not deny her accumulated cost-of-living increases on the grounds that the office of the recorder of deeds was newly-separated from the office of the circuit clerk. It was settled in *State ex inf. Lamkin ex rel. Harrison v. Tennyson,* 347 Mo. 1024, 151 S.W.2d 1090, 1091 (banc 1941), that the separation of the ex officio office of recorder of deeds from the office of the circuit clerk created no new office, but that the office of recorder of deeds had always existed. The issue here, however, is not whether the office existed prior to Maxwell's taking office, but whether she was entitled to the benefits of that office, or benefits acquired by other officeholders, before she formally took office.

Determination of the benefits of office to which Maxwell is entitled is controlled by three statutes: section 50.333.7, which provides for the county salary commission to set salaries for county officials; section 50.334, which specifically sets the base salaries for recorders of deeds; and section 50.333.12 which provides for optional cost-of-living increases. Maxwell does not contest the setting of her base salary, but only the meaning of the language and the consequential application of the cost-of-living component authorized by section 50.333.12. Because the language of that section has never been interpreted, and because we must do so to understand the benefits to which Maxwell is entitled, it is instructive to look at the language of section 50.333.7 and cases which have interpreted it.

▬ The primary rule of statutory construction is "to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words in the statute in their plain and ordinary meaning." *Day v. Wright County,* 69 S.W.3d 485, 490 (Mo.App. S.D. 2000) (citing *Metro Auto Auction v. Dir. of Revenue,* 707 S.W.2d 397, 401 (Mo. banc 1986)). "Where the language of a statute is clear and unambiguous, we will give effect to the language as written and will not resort to statutory construction." *Cantwell v. Douglas County Clerk,* 988

S.W.2d 51, 55 (Mo.App. S.D.1999). "If construction is necessary, we will construe a statute, or a provision thereof, in context." *Id.* We may consider statutes with similar or related subject matter in determining a statute's meaning. *Id.* We attempt to harmonize statutes relating to the same subject, and "if possible ... give meaning to all provisions of each." *Id.* (quoting *State ex rel. Lebeau v. Kelly,* 697 S.W.2d 312, 315 (Mo.App. E.D.1985)). If two statutes appear to conflict, we attempt to reconcile the language to give effect to both. *Day,* 69 S.W.3d at 490 (citing *Lebeau,* 697 S.W.2d at 315). If we cannot reconcile the conflict, "the general statute must yield to the more specific statute." *Cantwell,* 988 S.W.2d at 56.

From the plain language of section 50.333.7, it is clear that a county salary commission must meet at least once every two years to "consider the compensation to be paid for the next term of office for each county officer to be elected at their next general election." (Emphasis added.) In considering increases, "all officers or offices whose compensation is being considered by the commission at that time, shall receive the same percentage of the maximum allowable compensation." § 50.333.7 (emphasis added). The "maximum allowable compensation" refers to the compensation set forth by the legislature in related statutes specific to a particular office,[3] which in the case of county recorders of deeds is section 50.334. If a county salary commission has previously set all officers'

salaries at 100% of the maximum allowable compensation, the salary commission may authorize an additional increase, and "[s]uch increase shall be expressed as a percentage of the compensation being paid during the term of office when the vote is taken, and each officer or office whose compensation is being established by the salary commission at that time shall receive the same percentage increase over the compensation being paid for that office during the term when the vote is taken." § 50.333.7 (emphasis added). If a county salary commission votes to decrease compensation for all officers, such requires a two-thirds majority vote, "before the salary or other compensation of any county office shall be decreased below the compensation being paid for the particular office on the date the salary commission votes, and all officers and offices shall receive the same percentage decrease." § 50.333.7.

Most of the case law that interprets section 50.333.7 addresses how the phrase "maximum allowable compensation" is construed in relationship to the statutes specifically setting the base salary of certain county offices.[4] While this is not the issue directly before us, of interest is interpretation of the language specifying that any increases or decreases in salary are to be considered by the salary commission for the next term of office, and that such changes can only occur if authorized prior to the term of office. The version of a salary statute setting a public administra-

---

3. " '[M]aximum allowable compensation,' as used in [section 50.333] means the highest compensation which may be paid to the specified officer or office in the particular county based on the salary schedule established by law for the specified officer or office." § 50.333.11.

4. For interpretation of compensation of public administrators pursuant to section 473.739: See *Cantwell v. Douglas County*

*Clerk,* 988 S.W.2d 51 (Mo.App. S.D.1999); *Habjan v. Earnest,* 2 S.W.3d 875 (Mo.App. W.D.1999); *State ex rel. Pate v. Mooney,* 88 S.W.3d 37 (Mo.App. E.D.2002). For county assessors' compensation pursuant to section 53.082: See *Day v. Wright County,* 69 S.W.3d 485 (Mo.App. S.D.2000); *Dykes v. Gentry County,* No. WD 65188, 2006 WL 461139 (Mo.App. W.D. Feb.28, 2006).

tor's compensation was that in effect at the time the salary commission met to determine the salary prior to the commencing of the term of office. *Habjan v. Earnest*, 2 S.W.3d 875, 886 (Mo.App. W.D.1999). Where the salary commission sets salaries at 100% of the maximum allowable compensation, a statute enacted after that meeting, but prior to the time the officeholder took office, was effective to increase the officeholder's compensation. *Dykes v. Gentry County*, No. WD 65188, 2006 WL 461139, at *6 (Mo.App. W.D. Feb.28, 2006). If the salary commission votes to decrease all officeholders' salaries by the same percentage, the change cannot effect a reduction in salary during the current term of office. *Day*, 69 S.W.3d at 491.

■ The prohibition against mid-term increases in compensation is established in the Missouri Constitution, and says: "The compensation of state, county and municipal officers shall not be increased during the term of office; nor shall the term of any officer be extended." Mo. Const. art. VII, § 13 (1945, as amended). In *Laclede County v. Douglass*, 43 S.W.3d 826, 828 (Mo. banc 2001), the Missouri Supreme Court recently held that a statute which purported to allow a one-time, mid-term increase in salary for associate county commissioners whose terms had been extended by the legislature from two to four years, violated the constitutional prohibition against mid-term increases in compensation.[5] Although the court recognized

three exceptions to this rule, none of the exceptions were established prior to the time the officers took office.[6] *Id.* The common thread running through the above cases is that, to become effective, an officeholder's salary change must have been authorized prior to the term of office.

■ While the County Commission contends that a decision to award Maxwell the additional cost-of-living components would violate the constitutional prohibition, neither party has contested the constitutionality of the statute itself, nor preserved such an issue on appeal. "It is firmly established that a constitutional question must be presented at the earliest possible moment 'that good pleading and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived.'" *Callier v. Dir. of Revenue*, 780 S.W.2d 639, 641 (Mo. banc 1989) (quoting *Meadowbrook Country Club v. Davis*, 384 S.W.2d 611, 612 (Mo.1964)).

■ Turning to the statute in question, section 50.333.12 says:

At the salary commission meeting which establishes the percentage rate to be applied to county officers during the next term of office, the salary commission may authorize the further adjustment of such officers' compensation as a cost-of-living component and effective January first of each year, the compensation for county officers may be adjusted by the county commission, and if the

**5.** The statute in question was Section 50.333.13 RSMo Supp.1999, which was enacted at the same time as section 50.333.12, providing for the cost-of-living increase considered here.

**6.** See *Mooney v. County of St. Louis*, 286 S.W.2d 763, 766 (Mo.1956) (where additional duties, not germane to the office, have been imposed, a mid-term increase in compensation was permissible); see also *State ex rel. Dwyer v. Nolte*, 351 Mo. 271, 172 S.W.2d 854,

856–57 (1943) (where county ordinance setting salary of treasurer was declared invalid, there was no constitutional violation where no compensation at all had been provided for); see also *State ex rel. Moss v. Hamilton*, 303 Mo. 302, 260 S.W. 466, 469–70 (banc 1924) (statutory formula for calculating increases in compensation enacted before the election of the affected officer held not violative of the constitution).

adjustment of compensation is authorized, the percentage increase shall be the same for all county officers, not to exceed the percentage increase given to the other county employees. The compensation for all county officers may be set as a group, although the change in compensation will not become effective until the next term of office for each officer.

By the plain language of section 50.333.12, when a county salary commission meets to establish the base salary "to be applied to county officers during the next term of office," the salary commission may also authorize "the further adjustment of such officers' compensation" by the addition of a cost-of-living "component." If the county salary commission so authorizes, the duty then passes to the county commission to determine the amount, if any, to be added on an annual basis, to the compensation of "county officers" effective on the first of January of each year. The percentage increase in any given year must be the same for all county officers.[7]

Salary adjustments are authorized at a county salary commission meeting only for those offices "being considered by the commission at that time." § 50.333.7. Here, adjustments to compensation for the office of Recorder of Deeds of Daviess County for years prior to 2003 were not considered or authorized by the Salary Commission because the office had not been separated and put under the control of the County Commission until the term of office beginning January 1, 2003.

In our analysis, we considered the nature of a "cost-of-living clause." In ascribing statutory language its plain and ordinary meaning, we consult its dictionary definition. *Cantwell,* 988 S.W.2d at 55 (citing *City of Dellwood v. Twyford,* 912 S.W.2d 58, 60 (Mo. banc 1995)). A "cost of living clause" has been defined as: "A provision, commonly in labor agreements, and also in certain pension, retirement, and disability benefit programs, giving an automatic wage or benefit increase tied in some way to cost-of-living rises in the economy." BLACK'S LAW DICTIONARY 346 (6th ed.1990). The common understanding of a cost-of-living increase is that it allows the purchasing power of the employee's salary to keep up with rises in the cost of goods and services. Logically, to be entitled to an automatic increase in a wage, one must have been entitled to the wage to begin with. Because the language in sections 50.333.7 and 50.333.12 authorizes a county salary commission to consider the future compensation for officers to be elected for the next term of office, a cost-of-living increase attached to that salary is also prospective in application.

It is clear from the cases interpreting related salary statutes that officers are not entitled to compensation unless it was authorized by a county salary commission for that particular office prior to the time the officeholder took office. Maxwell has simply not made her case that we should interpret the language "the percentage increase shall be the same for all county officers" to entitle her to cumulatively added cost-of-living increases earned by other county officeholders prior to the time Maxwell took office. "Statutes providing compensation for an officer are strictly construed against the officer." *Day,* 69 S.W.3d at 491 (citing *Becker v. St. Francois County,* 421 S.W.2d 779, 783

---

7. We note that nothing in the language of section 50.333.12 specifically authorizes a cumulative annual increase in the percentage to be applied to the officeholders' base salary as a cost-of-living adjustment. Whether cumulative annual increases are intended by the statute has not been raised by the parties and is not an issue in this case.

(Mo.1967)). "[I]n construing *what the statutory compensation is,* the statute will be construed against the officer and in favor of the county." *State ex rel. Sprouse v. Carroll County Comm'n,* 889 S.W.2d 907, 910 (Mo.App. W.D.1994).

Even though the position of recorder of deeds existed, as an ex-officio office of the circuit clerk, prior to the time the County Commission voted to separate the two offices, Maxwell did not hold that position until January 1, 2003, and, thus, was not entitled to any compensation before that time. Logically, then, Maxwell was not entitled to the benefit of cost-of-living increases which may have accrued to other officeholders prior to her taking office. No dispute exists as to the fact that all county officeholders received the same 3% increase as an adjustment in compensation for the year 2003. Maxwell received that amount in 2003 and a cumulatively added adjustment to her salary in the same annually adjusted amount as other officeholders in 2004.

The judgment of the circuit court is affirmed.

BRECKENRIDGE, P.J., and HOLLIGER, J., concur.