# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 18, 2016
NOT TO BE PUBLISHED

**Supreme Court of Kentucky**

FINAL

2015-SC-000028-WC

DATE 3-10-16 EuitGrount DC

MARY WEDDING                                                          APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                          CASE NO. 2013-CA-000633-WC
WORKERS' COMPENSATION NO. 08-75597 AND 10-99647

COLLECTIVE BRAND, INC.;
STRIDE-RITE CORP.;
HONORABLE EDWARD D. HAYS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                                           APPELLEES

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Mary Wedding, filed this appeal to contest the reversal of the portion of her workers' compensation award based on an impairment rating attributed to an injury to her left shoulder and aggravations to injuries to her left and right wrists caused by a 2008 cumulative trauma injury. Wedding contends that it was the responsibility of Appellees, Stride Rite and Collective Brand, Inc., to file a petition for reconsideration to challenge the contested benefits for certain injuries and that the Workers' Compensation Board improperly shifted the burden to her. For the below stated reasons, we affirm.

Wedding began her employment with Stride Rite in 1997. Her job involved opening boxes, putting shoes in boxes, removing shoes from boxes, moving and stacking boxes, and pushing boxes down a conveyor line. Her job required repetitive lifting, tugging, pushing, and overhead work.

While still employed by Stride Rite, Wedding visited Dr. Richard DuBou on February 8, 2005, complaining that she experienced six months of tenderness and numbness in both of her wrists. Wedding was diagnosed with carpal tunnel syndrome in both wrists and she underwent a right and left carpel tunnel release. Dr. DuBou released Wedding to full duty work on September 29, 2005. Afterwards, Dr. DuBou assessed a 2% impairment rating for Wedding's right carpel tunnel syndrome and 0% for the left.

Wedding filed for workers' compensation for the right wrist impairment. She received temporary total disability ("TTD") and medical benefits. Stride Rite paid Wedding $1,686.97 to settle her claim. However, no Form 110 was ever filed with the Department of Workers' Claims and an Administrative Law Judge ("ALJ") did not approve the settlement. Stride Rite was acquired by another company sometime after Wedding's 2005 injuries and was renamed Collective Brand.

In 2007, Wedding again experienced pain in her wrists, but also in her hands, arms, and right shoulder. Wedding participated in physical therapy in 2008 to relieve her pain. She also sought treatment from her primary care provider, Dr. Mark Winders, on February 26, 2008. Wedding told Dr. Winders that the pain in her right elbow and right shoulder persisted for one year and

2

the pain in her right wrist started a week earlier. Per the ALJ, Dr. Winders diagnosed Wedding with a right-wrist sprain, right–shoulder-bicep groove tendonitis, and right-elbow epicondylitis. He also found Wedding's right shoulder to be diffusely tender. Dr. Winders referred Wedding to Dr. Phillip Dripchak, an orthopedic surgeon.

Dr. Dripchak had Wedding undergo an MRI which revealed she had degenerative right-joint AC with mild tendinopathy, full thickness tear of the infraspinatus/supraspinatus, and a type 1 SLAP lesion. A week later, after further review of the x-rays, Dr. Dripchak found Wedding had right-shoulder AC arthrosis and right-shoulder subacromial impingement with accompanying rotator cuff tendonitis in a sequential fashion. Dr. Dripchak gave Wedding several injections, which relieved her pain and referred her to Dr. Cyna Khalily, an orthopedic surgeon, for surgery.

Dr. Khalily performed a right-shoulder arthroscopy on August 20, 2008. Following the surgery, Wedding developed a stiff shoulder and another right-shoulder arthroscopy was performed on November 7, 2008. Dr. Khalily placed Wedding off work from July 22, 2008 to December 5, 2008. Dr. Khalily opined that work-related cumulative trauma was the reason that Wedding had to undergo surgery.

Wedding returned to work in January 2009. However, Wedding stated that she missed approximately twenty days of work due to pain in her wrists and shoulders. Wedding's employment with Collective Brand was ultimately terminated.

Wedding subsequently filed a Form 101 seeking compensation for the 2005 and 2008 injuries. Wedding claimed work-related injuries to her left wrist, right wrist, and left elbow for the 2005 incident. For the 2008 incident, Wedding claimed work-related injuries to her right wrist, left wrist, right shoulder, and left shoulder. The ALJ consolidated the claims.

Dr. Warren Bilkey conducted an independent medical examination ("IME") of Wedding on June 16, 2010. He stated that Wedding's pain was caused by repetitive work activities. He diagnosed Wedding with a work-related right shoulder strain occurring on February 13, 2008, and aggravated right wrist pain from repetitive work activities. Dr. Bilkey believed that due to Wedding's right-shoulder pain she had to compensate with her left shoulder which resulted in ongoing left shoulder soreness. He believed that Wedding reached maximum medical improvement ("MMI") and found she had a pre-existing 3% whole person impairment rating for each wrist as a result of the 2005 incident. He assessed her with a 10% whole person impairment rating, dissected as follows: 3% for the right shoulder, 4% for the right wrist, and 3% for the left wrist. Dr. Bilkey did not restrict Wedding's ability to work, but doubted that she would be able to tolerate a job like the one she performed at Collective Brands. Later, Dr. Bilkey provided an addendum altering his impairment rating to include a 1% whole person impairment rating attributable to Wedding's left shoulder. Dr. Bilkey stated that combining the 2005 and 2008 impairments yields a 15% whole person impairment.

4

Dr. Ellen Barrett performed an IME on June 1, 2010. Dr. Barrett believed that Wedding's June 2008 MRI suggested a right-shoulder SLAP tear and mild degenerative changes of the AC joint. Dr. Ballard opined that Wedding's right shoulder injury did not result from cumulative trauma and was not work-related. Dr. Ballard made that conclusion because a SLAP tear is not caused by cumulative trauma, but from an acute injury which Wedding did not allege occurred. Dr. Ballard assigned Wedding an impairment rating of 0% for her right shoulder and did not believe she needed further treatment.

Dr. DuBou re-examined Wedding on December 6, 2011. He reviewed the evaluations performed by Dr. Ballard and Dr. Bilkey. Dr. DuBou agreed with Dr. Ballard that the 2008 injury was not caused by cumulative trauma, but resulted from a SLAP tear. He disagreed with Dr. Bilkey's 6% whole person impairment rating for the 2005 surgery. Dr. DuBou also found that the 2008 injury did not worsen the 2005 injury.

The ALJ made the following pertinent findings regarding Wedding's injuries:

> 3. [Wedding] sustained work-related injuries on January 24, 2005; February 13, 2008; May 30, 2008; and June 17, 2008. April 23, 2008 has also been listed as an injury date. In reality, [Wedding] is claiming only two work-related injuries actually occurred, the first on January 24, 2005 and the second injury occurring in 2008 as a result of cumulative trauma.
> 4. The 2005 injury will be discussed first. [Wedding] claimed that cumulative trauma while she was employed at Stride Rite manifested on January 24, 2005 in left carpal tunnel syndrome and left cubital tunnel syndrome. Dr. [DuBou] performed three surgeries in 2005, one for left carpal tunnel on April 18, 2005; a second surgery for right carpal tunnel on June 1, 2005; and a third surgery to remove a foreign body on July 6, 2005.

5

5. It is undisputed that [Wedding] was paid temporary total disability benefits while she was off work in 2005 and her medical bills were also paid by [Stride Rite], and/or its workers' compensation insurance carrier. It is also undisputed that [Wedding] was issued a check on June 12, 2006 in the amount of $1,686.97. This check was intended as a settlement of the claim and this fact was acknowledged by [Wedding]. However, no Form 101 (Agreement as to Compensation) was ever executed or filed with the [Department]. Apparently the settlement was never approved by any [ALJ]. The treating physician, Dr. DuBou, opined that [Wedding] retained a 2% permanent impairment to the body as a whole as a result of the 2005 injuries. . . .

6. The ALJ finds that [Wedding] did sustain a 2% permanent impairment as a result of the 2005 injury. The finding is based upon the opinion of the treating surgeon, Dr. DuBou. Dr. DuBou has rendered treatment to [Wedding] since 2005 and he preformed three surgical procedures upon [Wedding]. Whereas the ALJ has considered the impairment rating rendered by Dr. Bilkey (6% to the body as a whole), Dr. Ellen Ballard agrees with Dr. DuBou that the 2% impairment from the 2005 carpal tunnel injury is the accurate impairment rating. The ALJ is persuaded by the opinions of Dr. DuBou and Dr. Ballard with respect to the permanent impairment rating for the 2005 injury.

. . .

9. After plaintiff had returned to work following the 2005 injury, she began having some problems with her right wrist in 2007 and underwent therapy with Kinetics. She also began to experience some pain and discomfort in her right shoulder in late 2007. Throughout her employment with Stride Rite, and later Collective Brand, [Wedding's] job required her to do repetitive lifting, tugging, pushing, and working above her head with cases of 6 to 24 pairs of shoes. KRS 342.0011 defines 'injury' as 'any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings.'

10. (a) The next question to be considered by the ALJ is whether or not [Wedding] sustained an 'injury' as defined by the Act, and more specifically, whether or not the cumulative trauma sustained during her work culminated in a harmful change in her human organism in 2008.

(b) [Wedding] commenced treatment with Dr. Winders in early 2008. Dr. Winders noted on May 30, 2008 that [Wedding's] job involved repetitive lifting. Dr. Winders referred [Wedding] to Dr. Dripchak in July of 2008, who diagnosed her as having a subacromial impingement of her right shoulder. In a

questionnaire dated June 24, 2008, Dr. Dripchak confirmed that [Wedding's] repetitive work was the cause of her problems and he took [Wedding] off from work as of June 24, 2008. He referred [Wedding] to Dr. Khalily, who performed surgery on the right shoulder on August 20, 2008. A second surgery involving the manipulation of the right shoulder under anesthetic so as to combat a 'frozen shoulder' was done on November 7, 2008 by Dr. Khalily. Dr. Khalily released [Wedding] to return to work on December 5, 2008, but she did not actually return to work until January 2, 2009. The ALJ finds that [Wedding] was temporarily totally disabled from June 24, 2008 until December 5, 2008, based on the evidence from Dr. Khalily, who performed the surgeries on [Wedding's] right shoulder. Dr. Khalily opined in a questionnaire dated June 21, 2010 that the surgeries were caused and brought about by cumulative trauma at work.

(c) Based on the evidence from the treating physicians, including Dr. Winders, Dr. Dripchak, and Dr. Khalily, the repetitive nature of the claimant's work for Collective Brand, Inc. was the cause of [Wedding's] injury to her right shoulder.

. . .

14. (a) The next issue to be determined is [Wedding's] entitlement to benefits under KRS 342.730, including multipliers.

(b) Both Dr. DuBou and Dr. Ballard assess 0% permanent impairment as a result of the shoulder condition. They also deny that [Wedding's] work activities contributed to the problem. The evidence from Dr. DuBou and Dr. Ballard is countered by evidence from the treating physicians, including Dr. Winders, Dr. Dripchak, and Dr. Khalily. The ALJ is persuaded by the evidence from the treating physicians and does hereby find that [Wedding] did sustain a cumulative trauma injury to her right shoulder on or about February 13, 2008.

. . .

(d) [Dr. Bilkey] has examined the claimant, reviewed all the medical records, and has rendered multiple reports. Dr. Bilkey opines that [Wedding] has a 10% permanent impairment to the body as a whole due to the upper extremity conditions. More specifically, he attributes 3% of the impairment to the right shoulder, 1% of the impairment to the left shoulder caused by having to over-compensate for the right shoulder condition, and the remaining impairment based on pain. [Collective Brand] has attacked Dr. Bilkey's methodology in his calculation of impairment rating through reports from Dr. DuBou and Dr. Ballard. The ALJ has carefully considered the criticisms by these physicians, as well as Dr. Bilkey's response to such criticisms. The ALJ is faced with deciding between 0% impairment and 10% impairment to the body as a whole. It cannot be ignored that [Wedding] has undergone

two surgical procedures to her right shoulder. [Wedding] complains to have continuing pain of such severity that she believes she is precluded from any of the former work which she has ever done. . . . When faced with the decision of awarding this claimant nothing versus the 10% impairment rating opined by Dr. Bilkey, the ALJ will follow the opinion of Dr. Bilkey and does hereby find [Wedding] to have a 10% permanent impairment under the AMA *Guidelines*, Fifth Edition as a result of the 2008 injury.

The ALJ also applied the three multiplier, KRS 342.730(1)(c)1, to Wedding's award and granted her vocational rehabilitation benefits pursuant to KRS 342.710.

Both parties filed petitions for reconsideration. Wedding only requested that the ALJ hold Collective Brand, as opposed to Stride Rite, responsible for all future medical treatment of her wrists. She did not request any clarification regarding the injuries the ALJ found she sustained. Collective Brand asked the ALJ to reconsider his reliance upon the 10% impairment rating assessed by Dr. Bilkey as the basis for the award of PPD benefits for the 2008 right shoulder injury. Collective Brand noted that Dr. Bilkey's assigned impairment rating was compound in nature in that it attributed 3% to her right-shoulder injury and the remaining impairment was for pain in her wrists and left shoulder. Yet the ALJ only specifically stated in the opinion and order that Wedding sustained a work-related injury to her right shoulder. Thus, Collective Brand contended that the ALJ could only choose between the 0% impairment rating assessed by Dr. DuBou and Dr. Ballard or the 3% assessed by Dr. Bilkey for the right shoulder injury. The ALJ denied the petitions.

8

Wedding and Collective Brand both appealed to the Board. The Board sided with Collective Brand and held in pertinent part:

> Dr. Bilkey's 10% impairment rating, which includes an impairment rating for the left shoulder and both wrists, is not consistent with the ALJ's finding regarding the nature of Wedding's February 13, 2008, injury. Consequently, the ALJ should not have considered Dr. Bilkey's impairment ratings for the left shoulder and both wrists in determining the extent of the impairment of the right shoulder. Stated another way, based on the ALJ's determination Wedding sustained only a right shoulder injury, the ALJ could not rely on upon the entirety of Dr. Bilkey's impairment rating which included impairment ratings for each wrist and the left shoulder.
>
> Significantly, Collective Brand raised this issue in its petition for reconsideration. Since the ALJ refused to alter his finding that Wedding sustained only a cumulative trauma injury to her right shoulder and there was no finding of left shoulder and bilateral wrist injuries due to the 2008 event, the only impairment ratings relevant to the 2008 injury are those assessed for the right shoulder. . .
>
> On remand, as the ALJ found Wedding only sustained a cumulative trauma injury to her right shoulder as a result of the February 13, 2008, event, he must only consider the impairment ratings attributable to the right shoulder injury. If the ALJ chooses to again accept Dr. Bilkey's impairment rating for the right shoulder, his award of PPD benefits must be based on the 3% impairment rating. . .
>
> Similarly, on remand the decision concerning the applicability of KRS 342.730(1)(c)1 must be based on the effects of the 2008 right shoulder injury. Since the ALJ relied upon an impairment rating for injuries to both wrists and the left shoulder which is contrary to his finding regarding the nature of the injury, it is necessary for him to determine whether only the 2008 right shoulder injury resulted in Wedding being unable to perform the job she was performing at the time of the injury.

The Board further held that Wedding was entitled to future medical benefits for her right wrist injury, but not entitled to medical benefits for any injury to her left wrist or left elbow. Finally, the Board vacated Wedding's award of

9

vocational rehabilitation benefits and remanded the matter for the ALJ to make further findings of fact.

Wedding appealed to the Court of Appeals who affirmed in part, reversed in part, and remanded the matter. The Court of Appeals affirmed the Board's opinion except for the portion which vacated the ALJ's award of future medical benefits, if any, for Wedding's 2005 left-wrist injury. Wedding filed this appeal.

The Board's review in this matter was limited to determining whether the evidence is sufficient to support the ALJ's findings, or if the evidence compels a different result. *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992). Further, the function of the Court of Appeals is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* at 687-88. Finally, review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* The ALJ, as fact-finder, has the sole discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky. 1985). For the below stated reasons, we affirm the Court of Appeals.

Wedding first argues that the Board and Court of Appeals failed to follow the long standing rule which places the burden upon the non-prevailing party to request specific findings of fact to preserve an appeal. *Eaton Axle Corp. v. Nally*, 688 S.W.2d 334 (Ky. 1985); CR 54.02. *Eaton Axle* held that patent

10

errors in an ALJ's opinion and award are unpreserved for appellate review if they are not asserted in a petition for reconsideration. 688 S.W.2d at 338. "The purpose of this rule is to require that all justiciable issues are disposed of before the appellate process begins." *Id.* at 338. Thus, to preserve a question of fact for appeal, the party unhappy with a certain factual finding must file a petition for reconsideration identifying the factual error. *Halls Hardwood Floor Co. v. Stapleton,* 16 S.W.3d 327, 330 (Ky. App. 2000).

Based on the above stated principles, Wedding argues that Collective Brand had to request in its petition for reconsideration a finding that Wedding did not sustain work-related left shoulder and wrist injuries due to cumulative trauma in 2008. Wedding believes that the ALJ's opinion and order implies that she did suffer such injuries due to his reliance on Dr. Bilkey's combined 10% whole person impairment rating. Since Collective Brand did not request additional findings on the 2008 cumulative trauma injury in its petition for reconsideration, Wedding argues that it could not later challenge those findings. We disagree.

The ALJ's opinion and award does not indicate he found that Wedding suffered left shoulder and wrist injuries. There is also no basis to assume that the ALJ implied the existence of a left shoulder and wrist injury by using Dr. Bilkey's impairment rating. Further, in its petition for reconsideration, Collective Brand asked the ALJ to reconsider the impairment rating he applied to Wedding because it was calculated by Dr. Bilkey based on injuries to her right shoulder, left shoulder, and wrists. Collective Brand stated that it

11

believed the impairment rating was wrong because the ALJ only found that Wedding suffered from a work-related right-shoulder injury in 2008. Instead of clarifying his findings by stating that he believed Wedding suffered injuries to her left shoulder and wrists, he instead stated that the "impairment rating of 10% to the body as a whole is amply supported by the evidence herein and that it accurately represents the permanent impairment of [Wedding]." Collective Brand sufficiently challenged the ALJ's findings to preserve their right to appeal that issue to the Board.

We note that Wedding argues that the Board and Court of Appeals have adopted a minority rule called the "Indiana Rule" which makes it the prevailing party's responsibility to seek and obtain essential findings not made by the ALJ. *See* 146 A.L.R. 123 (1943). However, as stated above, Collective Brand was the prevailing party and sufficiently challenged the ALJ's ruling in its petition for reconsideration. The Indiana Rule was not applied in this matter.

Wedding next argues that the Board erred by making *sua sponte* findings without remanding the matter to the ALJ for further fact finding. She correctly notes that the ALJ is the fact finder in a workers' compensation proceeding. *Paramount Foods, Inc.*, 695 S.W.2d 418. Wedding does not specifically state on which issue the Board made the objectionable *sua sponte* ruling but, we will assume she is referring to the findings limiting the 2008 cumulative trauma injury to her right shoulder. We do not believe the Board made improper factual findings. The Board's opinion states that since the ALJ only stated a right shoulder injury occurred, his application of the entire impairment rating

12

assigned by Dr. Bilkey based upon all of the alleged injuries was incorrect. This was merely a review of the record to ensure the ultimate conclusion was supported by the record. *W. Baptist Hosp.*, 827 S.W.2d 685. There is no error here.

Wedding finally argues that this Court should not apply the deference which is normally given to the Board and Court of Appeals' decisions pursuant to *W. Baptist Hosp.* Wedding believes that this Court should review the *de novo* legal issues which were raised and considered by the Board regardless of the fact that review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* at 687-88. However, we discern no reason to not follow precedent in this matter. There is nothing in the Board or Court of Appeals opinions which requires reversal.

For the above stated reasons, we affirm the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT,
MARY WEDDING:

Eric M. Lamb


COUNSEL FOR APPELLEE,
COLLECTIVE BRAND, INC.:

Erik Shane Branham


COUNSEL FOR APPELLEE,
STRIDE-RITE CORP.:

Donald Cameron Walton, III
Robert Johnson Powell
James Edward Skaggs